[No. 7791.   Decided March 22, 1909.]

R. V. ANKENY, *Respondent,* v. YOUNG BROS., *Appellant.*[1]

BROKERS—AUTHORITY—PRINCIPAL AND AGENT—SALES—BROKER AS
AGENT OF PURCHASER—EVIDENCE—SUFFICIENCY.   A coffee broker, B.,
at San Francisco, is constituted defendant's agent to buy two cer-
tain lots of coffee from two coffee merchants, where it appears that
defendant made an offer for coffee to L., a broker at Seattle, agent
of B., which B. declined; that B. wired L. that he could buy, if
unsold and accepted by telegraph, two certain lots at a certain
price, which offer was communicated to defendant and accepted by
wire from L. to B.; that B. relied on such acceptance, and pur-
chased the lots from the merchants, who shipped direct to defend-
ant, making delivery ex-warehouse according to the custom of
traders, notifying defendant, who corresponded with the merchants
with reference to the purchase.

SALES — DELIVERY AND ACCEPTANCE — DELIVERY EX-WAREHOUSE—
CUSTOM OF TRADERS.   There is a delivery and acceptance of coffee
sold, where a broker was constituted the purchaser's agent to buy
the coffee, and purchased the same to be shipped by steamer, and
the custom was to make the delivery at the warehouse at the point
of shipment, which was done, and proper warehouse orders were
delivered to the broker, who caused the coffee to be loaded aboard
ship; the purchaser being bound to take notice of the custom, and
the delivery to the broker being delivery to him.

[1]Reported in 100 Pac. 736.

SALES—DELIVERY—LOSS OF GOODS IN TRANSIT. After delivery and acceptance of goods sold, at the point of shipment, the vendee must suffer the loss of goods in transit.

FRAUDS, STATUTE OF—SALE OF GOODS—MEMORANDUM—SIGNATURE OF BROKER. A broker's signed contract to buy coffee showing the names of the seller and buyer, date, quality, amount, price and terms of sale, entered in his sale book, constitute a sufficient memorandum of the sale to satisfy the requirements of the statute of frauds.

SALES—BROKERS—PRINCIPAL AND AGENT—RATIFICATION OF PURCHASE BY BROKER. The purchaser of coffee ratifies a purchase made for him by a broker, where, upon being fully informed, he fails to express dissatisfaction, but on the contrary acknowledges receipt of the invoice and corresponds with the vendor respecting nonarrival of the shipment on time.

SALES—BY SAMPLE—QUESTION FOR JURY. A sale of coffee is not made by sample, as a matter of law, although samples were exhibited, where it appears that the sale was of two particular identified lots, delivered to the purchaser's agent and by him put aboard ship; it being a mixed question of law and fact for the jury.

Appeal from an order of the superior court for King county, Albertson, J., entered July 16, 1908, granting a new trial for error of law, after a nonsuit, upon a trial before the court and a jury, in an action for goods sold and delivered. Affirmed.

*McClure & McClure* and *Ira Bronson*, for appellant, contended, *inter alia*, that there was no knowledge on the part of the principal concerning the circumstances of the transaction sufficient to admit of a ratification of the unauthorized acts of the agent Bickford. *Murphy v. Clarkson*, 25 Wash. 585, 66 Pac. 51; *O'Shea v. Rice*, 49 Neb. 893, 69 N. W. 308; *Haynes v. Tacoma, Olympia & G. H. R. Co.*, 7 Wash. 211, 34 Pac. 922; *Armstrong v. Oakley*, 23 Wash. 122, 62 Pac. 499; *Norman v. Western Union Telegraph Co.*, 31 Wash. 577, 72 Pac. 474. Bickford, if acting as broker, was incompetent to represent both parties in the transaction without their full knowledge and consent. 1 Mechem, Sales, § 463; Mechem, Agency, § 943; *Farnsworth v. Hemmer*, 1 Allen 494, 79 Am. Dec. 756; *Meyer v. Hanchett*, 39 Wis.

419, 43 Wis. 246; *Rice v. Wood*, 113 Mass. 133, 18 Am. Rep. 459; *Bell v. McConnell*, 37 Ohio St. 396, 41 Am. Rep. 528; *Raisin v. Clark*, 41 Md. 158, 20 Am. Rep. 66; *Everhart v. Searle*, 71 Pa. St. 256; *Scribner v. Collar*, 40 Mich. 375, 29 Am. Rep. 541; 19 Cyc. 207, and note 80. Delivery to the purchaser ex-warehouse at the port of San Francisco, being a local custom, as shown by the evidence, would have no binding effect on the defendant in the absence of proof showing notice thereof. 12 Cyc. 1046; *Simon v. Johnson*, 101 Ala. 368, 13 South. 491; *German-American Ins. Co. v. Commercial Fire Ins. Co.*, 95 Ala. 469, 11 South. 117, 16 L. R. A. 291; *Mathias Planing Mill Co. v. Hazen & Co.*, 20 Ohio Cir. Ct. 287, 11 Ohio Cir. Dec. 54. Mere delivery without a part acceptance of the goods is insufficient to take the case out of the statute of frauds. 29 Am. & Eng. Ency. Law (2d ed.), 988, 989; 20 Cyc. 249; Bal. Code, § 4577; 1 Mechem, Sales, §§ 357, 365; *Denmead v. Glass*, 30 Ga. 637; *Keiwert v. Meyer*, 62 Ind. 587, 30 Am. Rep. 206; *Lloyd & Pullman v. Wright, Griffith & Co.*, 25 Ga. 215; *Maxwell v. Brown*, 39 Me. 98, 63 Am. Dec. 605; *Shindler v. Houston*, 1 N. Y. 261, 49 Am. Dec. 316; *Brunswick Grocery Co. v. Lamar*, 116 Ga. 1, 42 S. E. 366; *Gatiss v. Cyr*, 134 Mich. 233, 96 N. W. 26; *Hausman v. Nye*, 62 Ind. 485, 30 Am. Rep. 199; *Atherton v. Newhall*, 123 Mass. 141, 25 Am. Rep. 47; *Winner v. Williams*, 62 Mich. 363, 28 N. W. 904; *Simmons Hardware Co. v. Mullen*, 33 Minn. 195, 22 N. W. 294; *Norman v. Phillips*, 14 M. & W. 277; *Hanson v. Armitage*, 5 Barn. & Ald. 557; *Johnson v. Cuttle*, 105 Mass. 447, 7 Am. Rep. 545; *Pierson v. Crooks*, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. 831; *Allard v. Greasert*, 61 N. Y. 1; *Stone v. Browning*, 68 N. Y. 598; *Bullock & Co. v. Tschergi*, 13 Fed. 345.

*Harold Preston* and *Todd, Wilson & Thorgrimson*, for respondent, contended, among other things, that the purchase of the coffee by Lincoln through Bickford involved no element of discretion or personal skill, but was an act purely

mechanical, and power to delegate the performance of it was implied by law. 1 Am. & Eng. Ency. Law (2d ed.), pp. 979, 980; 4 Am. & Eng. Ency. Law (2d ed.), p. 967; Mechem, Agency, §§ 193, 194; *Sims v. May*, 1 N. Y. Supp. 671; *Eastland v. Maney*, 36 Tex. Civ. App. 147, 81 S. W. 574; *Rosenstock v. Tormey*, 32 Md. 169, 3 Am. Rep. 125. Young Bros., if they did not intend to be bound by Bickford's acts, should have promptly disavowed and repudiated the transactions. 1 Am. & Eng. Ency. Law (2d ed.), pp. 1195, 1203, 1206, and note; Huffcut, Agency, p. 34; Mechem, Agency, pp. 101, 102; *Clews v. Jamieson*, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183; *Foster v. Rockwell*, 104 Mass. 167. Castle Bros. and Bloom Bros., standing in the position of undisclosed principals, have the right to enforce the contract entered into by the agent, Bickford, in his name, but for their benefit. Huffcut, Agency, § 122; 1 Am. & Eng. Ency. Law (2d ed.), 1168; *Sullivan v. Shailor*, 70 Conn. 733, 40 Atl. 1054; *Havana etc. R. Co. v. Walsh*, 85 Ill. 58; *Barry v. Page*, 76 Mas. 398; *Darrow v. Horne Produce Co.*, 57 Fed. 463; *Ford v. Williams*, 62 U. S. 287, 16 L. Ed. 36. The book entries of Bickford, as broker, were sufficient to comply with the statute of frauds and constituted the contracts between the parties. Tiedeman, Sales, § 76, pp. 100, 442; Benjamin, Sales, §§ 273, 294, 295; 4 Am. & Eng. Ency. Law (2d ed.), 751, 966; *Coddington v. Goddard*, 16 Gray 443. If Bickford had any authority whatever to negotiate the purchase, it will be presumed, in the absence of evidence to the contrary, that he was authorized to transact the business in accordance with the customs and usages prevailing in San Francisco, even though Young Bros. did not know what they were. 19 Cyc. 199; Tiedeman, Sales, p. 440; 4 Am. & Eng. Ency. Law (2d ed.), p. 962; 29 Id. 394.

GOSE, J.—The complaint alleges, that about the 27th day of September, 1905, the defendant purchased from Castle Bros., in the city of San Francisco, and said Castle

Bros. then and there sold and delivered to the defendant, sixty-five bags of Guatemalan coffee, at the agreed price of $1,072.46; that Castle Bros. expended for carting the coffee the sum of $3, which the defendant agreed to pay, and that no part of the same has been paid. For a second cause of action it is alleged, that on or about the same date the defendant purchased from Bloom Bros., in the city of San Francisco, and the said Bloom Bros. then and there sold and delivered to defendant, fifty-nine bags of Hawaiian coffee, at the agreed price of $1,006.07, and that no part of the same has been paid. It is further alleged that, on or about the 4th day of November, 1905, each of said accounts was sold and assigned to Isidor Kohn, the original plaintiff in the action.

The answer, by suitable denials, joined issue on each of the causes of action. The defendant pleaded affirmatively certain facts tending to show that each of said alleged sales was within the statute of frauds. The reply joined issue upon the affirmative matter pleaded in the answer. Before the commencement of the trial, upon the stipulation of the parties, the respondent was substituted as the plaintiff. Upon the issues thus joined the case proceeded to trial to a jury. At the conclusion of the plaintiff's testimony and upon the motion of the defendant, a nonsuit was granted. Thereafter the court, upon the application of the plaintiff, granted a new trial. The defendant has appealed from such order.

The testimony tended to show, that one Lincoln was a coffee broker in Seattle at the time of the alleged sale; that at such time he was agent for one Bickford, who was, and for many years had been, a coffee broker in the city of San Francisco; that the appellant entered into negotiations with Lincoln with a view to purchasing coffee; that thereafter telegrams passed between Lincoln and Bickford relative to a sale to the appellant of two certain kinds of coffee; that on September 26, Lincoln wired Bickford at San Francisco, in substance, that the appellant offered eleven cents for the

entire lot of these two kinds of .coffee, viz., Nos. 24 and 33; that on the 27th Bickford answered by wire declining the appellant's offer, and .stating: "We can buy if unsold, and you telegraph acceptance immediately No. 24, 11¼ c., No. 33, 11½ c., all lowest quotation;" that Lincoln upon the receipt of this telegram (we quote.from his testimony), "advised Young Bros. [the appellant] without a doubt .of the contents of the telegram;" that the appellant accepted Bickford's offer; that Lincoln on September 27 sent Bickford a cipher dispatch, which translated reads: "Young Bros. accept all No. 24, 11¼ c., No. 33, 11½ c., cash, less 2 per cent. Ship per Santa Barbara;" that on September 27, Bickford, relying úpon the authority contained in such telegram, purchased of Castle Bros. sixty-five bags of No. 24, and from Bloom Bros, fifty-nine bags of No. 33, and wired Lincoln: "We have bought Young No. 24, 65 bags 11¼; No. 33, 59 bags 11½;" that on September 28, Lincoln advised .the appellant in writing of this purchase, and advised him further that he had ordered the coffee shipped on the steamer Santa Barbara, due to sail from San Francisco on the 30th inst.

On September 30, Castle Bros., by letter, advised the appellant of the sale, in which they stated: "Inclosed we beg to hand you invoice covering your esteemed order for coffee, which we shipped by Mr. Bickford, and who will no doubt forward you shipping receipt;" that the invoice inclosed with such letter stated that Castle Bros. had sold to appellant sixty-five bags Guatemala, at 11¼; that on October 3, the appellant wrote a letter to Castle Bros., in which it stated: "With regard to your invoice of September 29, we notice a charge of $3 for drayage. We have received a separate account from James Forrest and are returning their account and referring them to you for to share in the bill."

It further appeared, that on October 17, the appellant wired Castle Bros., stating that the coffee had not arrived; that on October 16, Castle Bros. wired to the appellant, stat-

ing that they had not received payment for the coffee, and that they had drawn for the amount; that on November 2, the appellant wrote to Bickford, stating that it understood that the Santa Barbara had met with an accident and that the coffee had been damaged; that it had declared on the loss October 11; that it was as yet unadvised as to the extent of the damage, and "also many other particulars regarding the shipment except that the original sellers are anxious for their pay;" "that it will be necessary to have you [Bickford] forward us a copy of the master's protest in order that we may make a claim for the damages;" that Bloom Bros. mailed their account for fifty-nine bags Hawaiian coffee to the appellant; that the account is dated September 29; that on October 17, they drew upon the appellant a sight draft for the amount of the account; that no payments have been made on either of such accounts; that the coffee did not reach Seattle; that on September 28, Bickford executed broker's contracts in triplicate for each of such sales, and forwarded one to Castle Bros., one to Bloom Bros., and one on each of said sales to either Lincoln or appellant; that he is not certain as to which of these parties he mailed the contract to; that such contracts showed the name of the party selling, the name of the purchaser, the date, quality, amount, price, and terms of the sale; that they were signed by Bickford; that he entered such contract on his sales book; that on September 29, Castle Bros. gave to Bickford for the appellant an order on the warehouse for the sixty-five bags of coffee No. 24, and on the same day Bloom Bros. gave him a like order for the fifty-nine bags of coffee No. 33; that on September 30, Bickford caused the same to be loaded on the steamship Santa Barbara.

A number of questions have been presented by both the appellant and the respondent, but, as we view the case, it falls within a narrow compass. There is some conflict in the evidence as to the correct translation of the telegram from

16—52 WASH.

Lincoln to Bickford in which he directed the latter to buy the coffee. There is, however, no material difference in the testimony as to the correct translation as applied to the view we take of the case. As we have shown, Mr. Lincoln testified that, after receiving Bickford's telegram stating that he could buy the coffee if unsold, he "advised Young Bros. without a doubt of the contents of the telegram ;" and again he said: "Well, Young Bros. accepted Mr. Bickford's offer." It is true, as the appellant urges, that Lincoln softened this testimony somewhat on his cross-examination. We gather from Bickford's testimony that the appellant knew that neither he nor Lincoln owned the coffee, and that he knew that they both were brokers. We have shown that it is in evidence, that, when Lincoln notified the appellant that Bickford had wired him the terms upon which he could buy the coffee, the appellant accepted Bickford's offer, and that Lincoln wired Bickford to that effect, and that Bickford thereupon made the purchase. It is urged that the evidence does not establish the fact that the warehouse orders and the shipping receipts covered the coffee sold. There was sufficient evidence as to its identity to be submitted to the jury.

The evidence further tends to show that there was a custom among traders to the effect that, in such transactions, delivery was made ex-warehouse. The appellant urges that the evidence confines this custom to San Francisco. We do not understand that it is so limited. We think the telegrams which passed between Bickford and Lincoln, as explained by the latter upon the witness stand, were in effect a direction from the appellant to Bickford to go into the market and buy the particular coffee for it at the price stated. The evidence is not susceptible of any other reasonable interpretation. Upon receipt of the telegram, "Young Bros. accepts," etc., Bickford became the agent of the appellant, empowered to buy the coffee for it, and he did so. An agency may be created by written or spoken words or by the conduct of the parties. This is fundamental. We have pointed out that,

on October 3, the appellant wrote to Castle Bros., acknowledging the receipt of the invoice of the sixty-five bags of Guatemalan coffee. Not only do the telegrams as explained by Lincoln tend strongly to establish such agency, but the subsequent conduct of the appellant in its letters to Castle Bros. and to Bickford, strengthens the view that the appellant intended to establish such relation.

We next inquire whether there was a delivery and acceptance of the coffee. The evidence, as we have said, tends to prove that there was a custom among traders to the effect that the delivery in such transactions was at the warehouse at the point of shipment. Proper warehouse orders for the coffee were delivered to Bickford, and he received it and caused it to be loaded aboard ship as directed. We have observed that the evidence does not show that the custom was local to San Francisco. The appellant was therefore obliged to take notice of such custom. However, Bickford being a San Francisco broker, a delivery to him according to the customary usage of the trade at that point would be binding on the appellant.

"In the absence of a special contract, the authority and duty of a broker depends upon the course of dealing in the particular community. A customer in giving authority to a broker to negotiate a transaction in a certain market is presumed, in the absence of evidence to the contrary, to have authorized the broker to transact the business in question in accordance with the rules, customs, and usages prevailing in that exchange." 19 Cyc. 199.

See, also, 4 Am. & Eng. Ency. Law (2d ed.), 962; Tiedeman, Sales, par. 272. There was, therefore, an ample *prima facie* showing of the delivery and acceptance of the coffee. Moreover, the broker's contract which Bickford executed, and his book entries, satisfied the requirements of the statute of frauds. Tiedeman, Sales, par. 76.

"There is a class of persons who make it their business to act as agents for others in the purchase and sale of goods, known to the common law as brokers. These persons, as a

general rule, are agents for both parties, and their signature to the memorandum or note of the agreement is binding on both principals, if the memorandum be otherwise sufficient under the statute." Benjamin, Sales, § 273.

"The bought and sold notes, according to the weight of authority, are only copies of the original contract, the entry upon the broker's book being the original and binding contract between the parties, which is not affected by a mistake in making out the notes." 4 Am. & Eng. Ency. Law (2d ed.), p. 751.

"The broker's signed entry in his book constitutes the contract between the parties, and is binding on both. . . . The bought and sold notes do not constitute the contract." Benjamin, Sales (7th ed.), §§ 294, 295.

See, also, *Coddington v. Goddard*, 16 Gray 443; 4 Am. & Eng. Ency. Law (2d ed.), p. 966; Tiedeman, Sales, pp. 100, 442.

There was evidence tending to show that the appellant, with knowledge that Bickford had purchased the coffee at the price theretofore directed by it, from whom he had purchased it, and with knowledge of all the terms and conditions of the contract, by his letters and conduct, ratified the purchase. It cannot, therefore, defeat a recovery because the goods were lost in transit.

" 'The rule as to what amounts to ratification of an unauthorized act is elementary and may be safely stated thus: Where a person assumes in good faith to act as agent for another in any given transaction, but acts without authority, whether the relation of principal and agent does or does not exist between them, the person in whose behalf the act was done, upon being fully informed thereof, must within a reasonable time disaffirm such act, at least in cases where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified such unauthorized act.' " Mechem, Agency, § 157.

In *Foster v. Rockwell*, 104 Mass. 167, it is said:

"There is another view of the case which is equally decisive in favor of the plaintiffs. On the 21st of October a letter was mailed by these agents to the defendant, giving him

definite information of the purchase and shipment, with all the particulars of the transaction. No reply was made to this letter, and the first expression of disapprobation on his part is contained in a letter to the agents dated the 29th of October, in reply to one of the 26th, containing a suggestion that the property had been lost in Long Island Sound. We think there is sufficient evidence, in this conduct of the defendant, that he intended the original authority to cover the act, or that he then ratified and affirmed it. The duty of the principal at once to disaffirm an act done by another in his name, or on his account, when brought to his knowledge, is more imperative when the unauthorized act is the act of an agent, done in the execution of a power conferred, in a mode not sanctioned by its terms. Implied ratification from mere silence more readily arises when the act is in misuse or excess of authority given. In such cases, the principal has no right to delay, if he intends in any contingency to repudiate the act of his agent. He cannot lie by, and seize the benefit of it if profitable, or renounce it if otherwise, at his election. The defendant's silence on the receipt of the letter in this case cannot be accounted for on any other theory than that of his approval of the purchase. . . . . If the transaction, when brought to his knowledge, was not seasonably disapproved, it is enough, and a ratification must be presumed, with all the consequences which follow, one of which is that the property vested in him, before its loss, by delivery to the carrier."

It is fundamental that the subsequent ratification of an unauthorized act when the facts are known is equivalent to a previous authorization. Mechem, Agency, §§ 167, 178.

Lastly, it is argued that this was a sale by sample. Whilst the evidence indicates that samples were exhibited to the appellant, there was an ample *prima facie* showing that the sale was of two particular, identified lots, and that they were delivered to Bickford and by him caused to be put aboard the steamer Santa Barbara. However, this was a question of mixed law and fact, and should have been submitted to the jury under proper instructions. 2 Mechem, Sales, § 1321; Tiedeman, Sales, § 188.

We conclude, therefore, that the respondent made a *prima facie* case, and that the order directing a new trial was without error. The judgment will therefore be affirmed, and either party may use the same evidence upon a new trial.

FULLERTON, CHADWICK, MOUNT, CROW, and DUNBAR, JJ., concur.