Argued July 15, decided July 22, rehearing denied September 9, 1913.

# FRANCK *v.* BLAZIER.*

(133 Pac. 800.)

**Appeal and Error—Findings—Conclusiveness.**

1. If there is any competent evidence to support findings of fact in an action at law tried to the court, they will not be disturbed by the Supreme Court.

**Brokers—Individual Interest—Good Faith.**

2. An agent employed to sell cannot ordinarily become interested in the purchase without the knowledge and consent of his principal, but he may openly and fairly buy the property at the price fixed by the principal if the latter has full knowledge of his action.

[As to the right of a real estate broker to commissions when he purchases the property himself, see note in Ann. Cas. 1912A, 202.]

**Brokers—Allegations—Affirmative Defenses.**

3. In order for defendant, in an action for a broker's commissions for selling property, to rely on the illegality of the contract because the broker secretly became a purchaser, such fact must be pleaded.

**Brokers—Commissions—Acting for Both Parties.**

4. A broker may act for both parties in the sale of property, and receive commissions from both, if he does so with their knowledge.

---

*On the question of the right of a broker to purchase real estate listed with him for sale, see note in 20 L. R. A. (N. S.) 1158; and on the right of a broker to commissions where, with principal's consent, he becomes purchaser, see note in 31 L. R. A. (N. S.) 536.

As to the right of a real estate broker who acts for both parties to commissions, see note in 24 L. R. A. (N. S.) 659.     REPORTER.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action by L. S. Franck against J. E. Blazier for a broker's commission tried before the court without the intervention of a jury. The court found in favor of plaintiff and entered judgment accordingly, from which defendant appeals. Plaintiff in his complaint alleges the contract and the consummation thereof.

Defendant alleges that plaintiff is not entitled to recover any compensation for any service performed by him for defendant under and by virtue of the contracts between them, for the reason that, unknown to defendant and without his consent, plaintiff had a secret agreement with some or all of the members of the syndicate mentioned in his complaint, whereby he was to receive a portion of the profit or compensation of the transactions, thus rendering void all contracts between plaintiff and defendant. During the month of December, 1910, defendant employed plaintiff to procure a loan for him of $500,000, on a logging railroad known as the "Cape Horn Railroad," situated in Skamania County, Washington. It was agreed between defendant and plaintiff that if plaintiff was successful in procuring this loan, defendant would pay him a commission of $10,000. Plaintiff proceeded from Portland to Detroit and other financial centers, and, after encountering difficulties, notified defendant that he was unable to procure the loan. Defendant then requested plaintiff to endeavor to sell the railroad, and fixed the price of $275,000, and defendant agreed to pay plaintiff a commission of $10,000 in the event of his being successful. Plaintiff organized a syndicate to purchase the railroad, and brought certain members of the syndicate and the defendant together, and as a result of

their negotiations the defendant's railroad was sold. A new corporation was organized, known as the Washington-Northern Railroad Company, to which all the rights and interests of the Cape Horn Railroad were transferred, the defendant receiving his price, $225,000 in cash and $50,000 in bonds. The Washington-Northern Railroad Company issued bonds in the sum of $1,000,000, secured by a mortgage upon all its property. The Oregon-Washington Timber Company, being the corporation that owned the timber, issued two series of bonds, one in the sum of $600,000, and one in the sum of $400,000, secured by first and second mortgages upon its property, and sold the $600,000 of its first mortgage bonds for the sum of $540,000 to the syndicate organized by the plaintiff, and as a bonus for the taking of all of those bonds the syndicate was given all of the shares of the capital stock of the Washington-Northern Railroad Company. The syndicate borrowed the money from the Mississippi Valley Trust Company, of St. Louis, and pledged the bonds and stock as collateral security for said loan. Defendant claims that, unknown to him, plaintiff entered into an agreement with one Noble, whereby it was agreed that he and Noble would pool the commission that Noble was to receive from the sale of the bonds with the commission that plaintiff was to receive from defendant and divide the same.

AFFIRMED : REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Ralph E. Moody, Mr. J. F. Reily* and *Mr. W. C. Healion,* with an oral argument by *Mr. Reily.*

For respondent there was a brief over the names of *Mr. Hugh Montgomery* and *Platt & Platt,* with an oral argument by *Mr. Montgomery.*

MR. JUSTICE BEAN delivered the opinion of the court.

It is plaintiff's contention that he informed defendant fully in regard to the complicated deal and that all he did was for the best interests of defendant, and necessary to consummate the transaction and obtain the money required by the defendant; that it was an honest arrangement. It is stipulated that, in order to enhance the security of the bond issue, the Oregon-Washington Timber Company, in which the defendant held shares of stock, entered into a contract on June 9, 1910, with the Washington-Northern Railroad Company and the Mississippi Valley Trust Company. It appears that in organizing the new railroad company plaintiff took one share of stock and became a dir' ,tor, as he states, at the instance of defendant Blaz' ,r and the attorneys attending to the affair. The qr ,stion as to whether or not defendant had full know' edge from the plaintiff, Franck, in regard to the latter's interest in the matter negotiated was an issue upon the trial. The Circuit Court found in favor of the plaintiff, in effect, that it was a fair transaction, and that plaintiff performed all of his obligations, and caused the sale to be consummated. Defendant excepted to the findings made, and requested the court to make certain findings in favor of defendant, in substance, the reverse, for the reason that the evidence showed that plaintiff, by becoming a member of the syndicate which took over the old railroad without defendant's knowledge, rendered the contract for a commission void.

1. In an action at law, tried by the court without the intervention of a jury, upon an appeal to this court, we can only examine the testimony to ascertain whether or not there is any competent evidence to support the findings. If there is such evidence, the findings of fact, which are of the same force as a verdict (Section 159, L. O. L.), should not be disturbed: *Sun Dial Ranch* v.

*May Land Co.,* 61 Or. 205 (119 Pac. 758) ; *Brown & Co.*
v. *Sharkey,* 58 Or. 480 (115 Pac. 156). Plaintiff and
defendant both testified, giving their versions of the
matter, which conflict as to the conclusions and under-
standings. It appears that, in order to interest the
parties and make the deal, it was necessary for the de-
fendant and others to guarantee a certain amount of
timber to be transported over the railroad at fixed
prices. Mr. Franck was in control of some timber
belonging to certain heirs. When it was concluded to
abandon the attempt to obtain a loan and sell the rail-
road, Blazier, on January 15, 1910, wired Franck from
Portland, Oregon, as follows: "Will sell road for two
hundred seventy five thousand cash. J. E. Blazier."
Franck then wired Blazier from Detroit, Michigan, on
January 17, 1910, the following: "Plan is * * party
to put in eighteen thousand dollars per mile for fifteen
miles of new road * * will be under my control which
will insure you fair treatment. Will you contract to
furnish forty million and Wiest twenty after first year
must guarantee eighty million Leadbetter and me to
furnish balance. * * [Signed] L. S. Franck." Also,
on same date Blazier received the following telegram
from Franck: "On this plan you will have to allow me
the ten thousand dollars commission as agreed on
other, only want this understood as I must take care of
party here to get this through. L. S. Franck."
Blazier answered thus: "Will allow you ten thousand
have your people got to come out and investigate be-
fore closing deal, if so must be at once have Omaha
deal on. J. E. Blazier." Several other communica-
tions passed between them. The lengthy correspond-
ence between plaintiff and defendant during the prog-
ress of the negotiations is contained in the record.
Franck and the party with whom he was negotiating
then came to Portland, Oregon, and the deal was closed

with defendant. From the statement in the message to Blazier, above quoted, to the effect that the railroad, as proposed to be extended, would be under the control of Franck, thus insuring fair treatment of defendant, who was interested in obtaining a means for the shipment of his logs, and the proposition of plaintiff and another to furnish the balance of the timber required to be secured for hauling over the road, and the information to the defendant that Franck had "to take care of party," as well as from plaintiff's evidence, the court, acting as a trier of facts, might reasonably conclude that defendant knew that plaintiff was, according to the plan proposed, to be interested in the railroad and the operation thereof, and that plaintiff was dealing with different persons in order to obtain their aid in selling the railroad, reorganizing and securing a sufficient amount of traffic to make the bonds of the road valuable, as an inducement for the payment of the money to defendant. Indeed, it is difficult to conjecture how the correspondence referred to could be construed otherwise than that it was intended plaintiff was to be interested in the purchase and future management of the properties sold, and that defendant desired and consented to a culmination of the deal with that understanding. Unless Franck was to have an interest in the property sold, we fail to see how it could be expected that it would be under his control. Whether or not the venture was profitable would not change the contract if defendant understood the details and consented thereto.

2. It is a salutary rule that, in order to insure good faith and loyalty, an agent employed to sell cannot generally make himself a purchaser, or become interested in the purchase, without the full knowledge and consent of his principal: 31 Cyc. 1437, 1438; Mechem, Agency, § 643; *Hammond* v. *Bookwalter,* 12 Ind. App.

177 (39 N. E. 872, 873); *Porter* v. *Woodruff,* 36 N. J.
Eq. 174. Where the agent openly and fairly buys the
property, or is interested as one of the purchasers, at a
price fixed by the principal, with full and complete
knowledge that the agent is one of the purchasers,
according to the weight of reason and authority the
transaction is valid: 31 Cyc. 1439; *Jameson* v. *Cold-
well,* 23 Or. 144 (31 Pac. 279); Mechem, Agency, § 644.

3. It appears that Franck negotiated mainly with
one Noble, who was to sell the bonds of the Washington
& N. R. R., and defendant complains that plaintiff
agreed with Noble to pool commissions; Noble and
another to have two thirds of plaintiff's commission,
and plaintiff to have one third of the commission on
the sale of the bonds, if any were sold after the organ-
ization of the new company. Plaintiff explains that
this was necessary to make the trade, and was what he
referred to when he stated in his message to defendant
that he had to take care of a party, and exacted the
$10,000 as commission, and that defendant was in-
formed in regard thereto. This matter is not pleaded
in the answer, and is mentioned only incidentally in
plaintiff's testimony. The illegality or secrecy of a
contract must be specially pleaded to be available as a
defense. Evidence of such matter is not admissible
unless so pleaded: *Buchtel* v. *Evans,* 21 Or. 315 (28
Pac. 67); *Thorne* v. *Barth* (Sup.), 114 N. Y. Supp. 900.

4. Franck had a right to act with both parties in the
deal and receive commission from both, provided the
business was open, fair, and honest, and each party
knew of the employment by the other: *Jameson* v. *Cold-
well,* 23 Or. 144 (31 Pac. 279); *Rice* v. *Wood,* 113 Mass.
133 (18 Am. Rep. 459); *McLure* v. *Luke,* 154 Fed. 647
(84 C. C. A. 1, 24 L. R. A. (N. S.) 659).

It was plaintiff's contention upon the trial, and there
was evidence to fairly support the theory, that defend-

ant was fully informed in regard to the facts, and consented to the termination of the deal with an understanding of the true conditions. The trial judge saw and heard the witnesses, and was in a better position to pass upon the conflicting claims than is this court, and the finding should not be disturbed on account of a conflict in the evidence: Article VII, Section 3, of the Constitution as amended (see Laws 1911, p. 7).

The judgment of the lower court will be affirmed.

AFFIRMED: REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.