Argued September 18, affirmed September 29, 1914, rehearing denied January 5, 1915.

# NORMAN *v.* ELLIS.

(143 Pac. 1112.)

**Appeal and Error—Questions of Fact—Trial by Court.**

1. Under Section 159, L. O. L., providing that the findings of the court in an action at law shall be deemed a verdict, where there is any evidence to sustain the findings, they are conclusive on appeal, and the appellate court cannot consider the weight of the testimony.

**Appeal and Error—Record—Questions Presented for Review.**

2. Where the bill of exceptions consists simply of a transcript of the testimony with the objections of counsel, certified by the judge to contain all the testimony, it will be considered only to determine the correctness of a ruling on a motion for a nonsuit or directed verdict.

**Brokers—Action for Compensation—Questions of Fact.**

3. In an action for services as a broker in procuring a sale of corporate stock to defendants, evidence *held* to present a question of fact whether money paid by one of the defendants to plaintiff was for expenses of employment or was a personal loan distinct from the transaction in suit.

**Brokers—Action for Compensation—Questions of Fact.**

4. In an action for services as broker in procuring the purchase of corporate stock, evidence *held* to present questions of fact on the questions of plaintiff's employment and service.

[As to when a broker has earned his commission, see note in 139 Am. St. Rep. 225.]

From Multnomah: JAMES W. HAMILTON, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is an action by Sidney Norman against Robert H. Ellis, Edward Boyce, Harry L. Day, Eugene R. Day and Jerome Day.

The substance of the complaint in this case is that about January 25, 1911, the defendants by their duly qualified agent, Harry L. Day, himself being one of them, employed the plaintiff as a broker to negotiate with the Norman Hotels, Limited, a corporation, and its officers and stockholders to affect a purchase or an agreement to purchase all the interest of that cor-

poration in the capital stock of another incorporated institution known as the Portland Hotel Company, and agreed to pay the plaintiff a reasonable sum for his services to be so rendered; further, that in pursuance of said employment between that date and June 1st of the same year the plaintiff rendered services to the defendants in the purchase of said stock, as a result of which a sale was consummated and they purchased all the interest of the Norman Hotels, Limited, in the stock of the Portland Hotel Company for $375,000. He alleges that his services were reasonably worth $18,750, no part of which has been paid, except $500 as expenses.

All these allegations are denied by the answer, in which all the defendants join. The substance of their further answer is that, in all the subsequent negotiations which ended in the purchase of the stock at the price named in the complaint, the plaintiff was acting in the interest of the Norman Hotels, Limited, and its stockholders, and not for the defendants or either of them, and that all propositions which the plaintiff put forth in those negotiations were rejected and failed of accomplishment. Concerning the $500 mentioned in the complaint the defendants say that it was a loan from the defendant Harry L. Day to the plaintiff at the request of the latter, and that it had no connection whatever with the sale of the stock of the Portland Hotel Company.

The reply challenges the new matter in the answer in material particulars. The issues thus formed were tried before the court without a jury. Findings of fact and conclusions of law awarding the plaintiff a judgment for a balance of $4,500, with interest, aggregating $5,085, were made and filed by the court.

The defendants have joined in an appeal from the resulting judgment. AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. John M. Gearin.*

For respondent there was a brief with oral arguments by *Mr. Chester G. Murphy* and *Mr. Alex M. Winston.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. "The finding of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reasons, as far as applicable, and a new trial granted": Section 159, L. O. L. The construction placed upon this section by our former decisions is to the effect that if there is any evidence to sustain the findings, they are conclusive upon appeal. We are not at this juncture concerned about, nor can we take notice of, the weight of the testimony. The case is not here on a new trial on the facts, as if the litigation were in equity. This is a law action, and must be determined agreeably to the rule laid down in the section mentioned: *Giaconi* v. *Astoria,* 60 Or. 12, 28 (113 Pac. 855, 118 Pac. 180); *Aerne* v. *Gostlow,* 60 Or. 113 (118 Pac. 277); *Van De Wiele* v. *Garbade,* 60 Or. 585 (120 Pac. 752); *Reid* v. *Stanley,* 62 Or. 151 (124 Pac. 646); *Prudential Trust Co.* v. *Merchants' Nat. Bank,* 66 Or. 224 (133 Pac. 1191); *Franck* v. *Blazier,* 66 Or. 377 (133 Pac. 800).

2. Moreover, our quest is thus restricted by the state of the record. The bill of exceptions consists simply of a transcript of the testimony heard at the

trial, with the objections of counsel interposed through-
out, and certified by the judge to contain all the testi-
mony offered. The only purpose for which such a
bill is available is to determine the correctness of the
ruling on a motion for a nonsuit or for a directed ver-
dict: *National Council* v. *McGinn,* 70 Or. 457 (138 Pac.
493).

3, 4. It seems that the stock of the Portland Hotel
Company was owned by two different factions, in one
of which the Day brothers predominated, while the rul-
ing spirits in the other faction were the Norman bro-
thers. Disputes had arisen between the two factions,
in which considerable ill feeling was engendered. In
January, 1911, Harry L. Day, one of the defendants,
was sojourning in Los Angeles where the plaintiff at
that time resided. The testimony of the latter is that
he approached Harry Day and had the following con-
versation, the plaintiff beginning:

"It seems a pity an investment of that kind should
be so tied up. Why, as sensible men, don't you get
together and fix it up? (Day:) We have made some
efforts, but have been unable to do so. (Norman:)
Do you think that my services as mediator would be
of any benefit? (Day:) You are just the man to do
it. I have confidence in you, and you are a relative of
the other side; go at it."

He tells of overtures made by him to the other Nor-
mans, who were his uncles, and that a Mr. Breen, a
stockholder of the Norman faction, came to Los An-
geles to assist in the negotiations. The plaintiff in
that connection testifies as follows:

"Well, we endeavored to get some help or detail out
of Mr. Breen in regard to this business for some weeks,
and then Harry Day said to me: 'I think you are wast-
ing your time bothering. I think you had better get

on the train and go North. I will give you letters of introduction to my brother-in-law, Mr. Boyce, and to my brother Eugene, at Wallace, and you go North and see what you can do with them.' "

He further testifies of going to Portland and calling upon Mr. Boyce with his letter of introduction, and was by him referred to Eugene Day at Wallace, Idaho, The testimoney discloses that the plaintiff negotiated with Eugene Day about settlement, in the course of which they canvassed the selling of the Day stock to the Normans and of the Norman stock to the Days. This resulted in Eugene Day making an offer in writing to purchase the Norman stock, in which offer this language occurs:

"Fifty thousand over the purchase price, price to be arrived at by secretary's figures. Ten thousand dollars additional to Sidney Norman with the understanding that this sum would not in any event be added to purchase price, and that it is tendered in recognition of the friendship between us. Notes and escrow proposals as made by Sidney Norman."

This proposition was not accepted by the Normans.

It also appears in his testimony that he reported to Harry Day on his return to Los Angeles his want of success in his endeavors in Portland and Wallace, whereupon Harry Day said:

"That's all right, Sidney; you are doing mighty well. It is going to take a long time to get these people together. Eugene does not come to a quick decision, and it will probably take some time longer before we can make a deal. * * Keep at it, and you will eventually get it settled."

He also speaks of negotiations with the defendant Ellis who appears to have been operating in the matter in behalf of the other defendants. Another witness,

Judge Cake, one of counsel for the Normans, testifies in substance that in Los Angeles, some time in March, 1911, he conversed with Harry L. Day on the subject and stated that if a transfer of the stock was made on account of negotiations between Day and Cake, the price should be net and independent of any compensation to be paid to the plaintiff, and that the Days were to pay that compensation, in all of which Day acquiesced. Besides all this Harry L. Day gave his check for $500 to plaintiff after the latter had returned to Los Angeles from Idaho. The plaintiff says this was to cover his expenses in connection with his employment in question. Harry Day of course testifies it was his personal loan to the plaintiff, and had nothing to do with the sale of the stock, but it was for the trial court to decide as a question of fact which story was the correct statement.

The parties finally came together on June 1, 1911, the Days being represented by the defendant Ellis and their attorney and the Normans being represented by their attorneys. The plaintiff was also present. The result of this conference was that the Normans entered into a written executory agreement for the sale of all their interest in the Portland Hotel Company to Harry L. Day and Eugene R. Day, and it is stated in the testimony that the deal was finally consummated and the Norman interest in the stock in question passed to the Day faction in pursuance of the writing.

In our judgment these excerpts from the testimony were legitimate to have gone to a jury at such a trial on the question of employment and service, and of course constituted evidence in support of the findings of the court which stand in lieu of a verdict. According to his testimony the plaintiff offered his services, and the defendant Harry Day accepted them. It is

admitted that he gave the plaintiff letters of introduction to some of his associates in the Day faction with a view of accomplishing a settlement of the differences between themselves and the Normans. It may be conceded that all these circumstances can be considered equivocal, operating either way according to how the trier of the issue estimated the testimony, but they involve only questions of fact, and the judge who saw the witnesses and heard them testify is better qualified to decide such a dilemma than we who read only the paper testimony. From the circumstances detailed in the evidence the trial judge may well have concluded that the Days were acting together; that negotiations between the plaintiff and them began with Harry Day and passed successively to the defendant Boyce and Eugene R. Day, culminating with the defendant Ellis, who was operating for all the defendants, and finally consummated the purchase of the Norman stock as a resultant, more or less, of plaintiff's effort. The testimony shows also that the plaintiff made several attempts to accomplish a settlement of the dispute by the purchase of the Norman stock. While it is true that he did not succeed at the time in effecting any solution of the dispute, yet in our inability to fathom the human mind we cannot say with mathematical certainty how much influence he may have had on the parties concerned in working out the result. All these things are circumstances which the court was entitled to consider, and the deduction of the judge from the whole testimony is one of fact with which we cannot interfere. There is much testimony controverting the testimony on the part of the plaintiff, but, as we have seen, that is no concern of ours in the situation which presents itself on the record.

It was contended at the argument that the court erred in admitting the testimony of the plaintiff and the deposition of one of the witnesses for the Normans, to the effect that at the interview between the parties, resulting in the written agreement to sell, it was stated by the attorney for the Normans that one of the conditions of the contract to be then executed was that the Days should take care of the commission of the plaintiff. The contention of the defendant is that the agreement having been reduced to writing, oral testimony could not be heard of conversations occurring immediately before the execution of that document about what terms it should contain. The bill of exceptions is not in a condition to present that question within the precedent already cited, and hence no further notice will be taken of it.

No question was raised at the hearing about the several liability of the defendants. They have answered together, and it seems that they are making a common cause against the plaintiff, denying all liability to him and not seeking to impose it upon one of themselves to the exclusion of the others. In short, we conclude that there was testimony, irrespective of its weight, which the court was entitled to consider in support of its findings in favor of the plaintiff. We cannot disturb the conclusion of the judge as thus formulated, and his decision must be affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.