Argued at Pendleton November 2, affirmed December 27, 1921, rehearing denied January 24, 1922.

## CANNON *v.* FARMERS' UNION GRAIN AGENCY,

### A CORP., ET AL.

(202 Pac. 725.)

**Appeal and Error—Findings Supported by Evidence not Reversible.**

1. Under Section 159, Or. L., findings of fact cannot be set aside on appeal, if there is any competent evidence to support them.

**Evidence—True Date of Stock Certificate Could be Shown by Parol.**

2. That a stock certificate, dated at a time when its issuance would have resulted in an overissue of stock, was not then issued,

---

2. Admissibility of parol evidence to show instrument as executed on day other than date it bears, see note in **Ann. Cas. 1913A,** 496.

but at a later time when the authorized capital stock had been increased, and that it was given the earlier date in order that dividends or profits accruing from such date might offset the interest on the subscription note given therefor on the earlier date, might be shown by parol such showing not contradicting any minutes or records of the corporation.

**Evidence—Unrecorded Corporate Acts may be Proved by Parol.**

3. In the absence of a record, the acts of corporations may be proved in the same manner as the acts of individuals, and, if no direct evidence can be adduced, facts and circumstances may be proved from which the acts may be inferred.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

This action was prosecuted by Roy Cannon, plaintiff, in the Circuit Court of the State of Oregon in and for Umatilla County, against the defendants, for the recovery of the sum of $1,800, with interest thereon from January 17, 1918. The cause of action arose from sale of stock by defendants to the plaintiff.

Cannon avers that the defendant Farmers' Union Grain Agency sold him 180 shares of stock in the corporation, at the par value of $10 a share, and that this stock so sold to him was a part of an overissue of stock made and sold by the defendants. The case was argued here and submitted with a similar case instituted by one Charles Kirk against the same defendants. The following is a synopsis of the complaint:

Paragraph 1 alleges the corporate character of the Farmers' Union Grain Agency, with the location of its principal place of business, and that the persons named as codefendants were its officers. Paragraph 2 alleges:

"That on the seventeenth day of January, 1918, the capital stock of said corporation consisted of 5,000 shares of the par value of $10 per share."

Paragraph 3 avers that the board of directors named as defendants sold and issued to plaintiff its stock certificate numbered 418, for 180 shares of the stock in said corporation, for the sum of $1,800; that defendants sold the stock to plaintiff without obtaining a license from the State of Oregon to sell said stock; that at the time the plaintiff purchased said 180 shares of stock the defendants represented to him that the corporation owned the same and that the defendants had the right to issue and sell the stock to plaintiff; that said representations were knowingly false and were made by the defendants with intent that they were to be acted upon by the plaintiff; that the plaintiff relied upon the representations so made, and that he was fraudulently induced to give credit to the corporation and purchase the stock by reason of the false and fraudulent representations and official acts and conduct of defendants, and that plaintiff acted upon the representations and official acts and conduct of the defendants to his damage in the sum of $1,800, together with interest thereon at the rate of 6 per cent per annum from January 17, 1918, until paid.

Paragraph 4 alleges that on January 17, 1918, the corporation was unable to pay any dividends, or its debts; that it was being operated at a loss; that it was heavily indebted to W. W. Harrah, R. O. Earnheart and H. J. Rosenberg, its directors, and that defendants were attempting to raise money by the sale of stock in order to pay themselves the money that was due them from the corporation and to relieve themselves from all liability upon the negotiable paper that the corporation had issued.

The complaint further alleges that the plaintiff, on the twenty-fifth day of October, 1919, first discovered

that the representations made by defendants were false, in that at the time the stock was issued and sold to plaintiff by defendants, the corporation did not own said stock, nor did defendants have any right to issue and sell any stock certificates the sale of which at par would bring the amount of the stock of the corporation sold to a value in excess of the sum of $50,000; that the defendants had no right to issue and sell shares of stock of the corporation in excess of 5,000 shares; that certificate of stock numbered 418 issued and sold by the defendants to the plaintiff for 180 shares of stock of the corporation exceeded in value by about $10,000 the sum of $50,000, the amount of the capital stock of the corporation; that by sale of said stock the defendants have perpetrated a fraud upon plaintiff and have damaged him in the sum of $1,800, with interest from January 17, 1918, and plaintiff demands judgment against defendants for that sum.

The defendants, answering, deny that plaintiff has been damaged by the alleged fraudulent or other acts or conduct of the defendants, or either or any of them. For affirmative defense, defendants allege, among other things, that on and prior to the seventeenth day of January, 1918, the plaintiff Roy Cannon, Charles Kirk, and other citizens of Athena and vicinity, were endeavoring to induce the defendant Farmers' Union Grain Agency to construct and operate as part of its grain system an elevator at Athena for the convenience and profit of said Roy Cannon, Charles Kirk and other citizens; that on that date, at the request of the citizens of Athena and vicinity, the defendants met with the plaintiff and a large number of other citizens, who undertook to induce the Farmers' Union Grain Agency to construct, at

Athena, Oregon, an elevator, and, as an inducement, plaintiff and others attending said meeting proposed to defendants that if the Farmers' Union Grain Agency would cause its capital stock to be increased, they would subscribe for and take from such corporation a large amount of such increased capital stock and pay therefor, in order that funds might be raised for the purpose of constructing a grain elevator; that plaintiff Roy Cannon, and such other persons, as a pledge of good faith and as an assurance that they would subscribe for, take and pay for such increased capital stock, proposed and suggested that each of them would deposit with a committee to be selected by themselves, a promissory note or a check for the respective amounts proposed to be subscribed by them; that in pursuance thereof, plaintiff promised that he would subscribe for 180 shares of such capital stock, in the sum of $1,800, face value, and thereupon made and delivered to such committee so selected his obligation for $1,800.

It was further agreed at such informal meeting that the notes and checks then and there executed by the respective parties should be placed by the committee so appointed with the First National Bank of Athena, Oregon, to be held by the bank until such time as the defendant corporation should, through due and legal process, cause its capital stock to be increased and issued, and that upon the issuance of the same and the delivery thereof to the First National Bank of Athena, in the amount and for the number of shares respectively agreed upon, the said notes and checks should then be delivered and paid to the defendant corporation. But, in the event the corporation should not succeed in increasing its capital stock, or in issuing and delivering to the bank

such shares, then and in that event the notes and
checks were to be returned to the persons who had
given and caused them to be so placed with the bank.
The answer further avers the action taken by the
defendant corporation in increasing its capital stock
from $50,000 to $200,000, and the issuance by the
corporation commissioner of the State of Oregon of
certificate of increase of capital stock; that there-
after, the defendant corporation caused to be issued
to the plaintiff Roy Cannon its certificate numbered
418, for 180 shares of the increased capital stock of
the corporation and of the face value of $1,800, which
certificate was delivered to the First National Bank
of Athena for plaintiff, whereupon the First National
Bank of Athena, acting for Cannon, received and
accepted that certificate of stock and delivered to the
defendant corporation the obligation of Cannon for
$1,800 in payment therefor; that the obligation hav-
ing been dated as of January 17, 1918, the day upon
which it was signed and left with the bank, certificate
of stock numbered 418 was upon its face dated the
same date, to wit, January 17, 1918, in order that
the holder thereof might participate in any profits
accruing upon the stock represented thereby between
the seventeenth day of January, 1918, and the
eighteenth day of February, 1918, the date of the
delivery of the certificate; that thereafter plaintiff
received and accepted such certificate of stock and
voted at subsequent meetings of the stockholders of
the defendant Farmers' Union Grain Agency; that
certificate numbered 418 so taken by the plaintiff
was exclusively of the issue of the increased capital
stock of the corporation, was not sold to the plain-
tiff at a profit or on commission, and was not offered
for sale to the public. Defendants further allege that

the plaintiff induced them to believe that he was act-
ing in good faith in all of such transactions, and,
relying upon the good faith of the plaintiff they pro-
ceeded in the manner alleged, and built an elevator
plant at Athena, Oregon, and expended more than
$70,000 in the construction and equipment thereof,
and that plaintiff ought not now to be heard to dis-
pute or to question the various transactions.

The action was tried by the court without the in-
tervention of a jury. The court made and filed its
findings of fact and conclusions of law, based upon
which it determined that the defendants were entitled
to have judgment against the plaintiff "dismissing
this action and the complaint filed herein, and for
costs and disbursements * * ."

Plaintiff excepted to findings of fact numbered 3,
4, 5, 6, 7, 8, 9 and 10, and moved the court to strike
out each of said findings of fact, which motion was
overruled. Plaintiff likewise excepted to each con-
clusion of law found by the court, and moved the
court to make additional findings of fact. This mo-
tion was overruled by the court, whereupon plaintiff
excepted.

The plaintiff appeals, assigning error as follows:

In the making and finding of facts numbered 3, 4,
5, 6, 7, 8, 9 and 10, and each and every finding of
fact included therein, for the reason that they are
opposed to the evidence and are not supported
thereby; in making conclusions of law numbered 1, 2,
3 and 4.

In refusing to make the additional findings of fact
numbered 1 to 14, inclusive.

In refusing to find that the corporation could act
only through its records.

In allowing the records of the corporation to be
varied by unauthorized oral testimony.

In holding that a corporation does not act through its records.

In holding that the testimony of directors regarding the affairs of the corporation contradicted its written records.

In holding that the sale of stock to the plaintiff without a permit from the corporation commissioner is valid.

In holding that defendants were not required to comply with the Blue Sky Law.

In rendering a judgment for defendants.

In not giving a judgment for plaintiff and against defendants.

In refusing to hold the records of the corporation binding.

In receiving the testimony of witnesses regarding an informal public meeting of citizens held at Athena, Oregon, on January 17, 1918.

In holding valid the sale of stock to plaintiff.

In holding that defendant had a valid contract with the plaintiff for the purchase of increased capital stock.

In holding that plaintiff ratified illegal act of defendant.

In holding that the defendant corporation accepted any proposition made to it.

In holding that the stockholders had ratified the acts of the defendant.

In holding that there was no fraud or evidence of fraud perpetrated by defendant.

In permitting the introduction of certain testimony.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Richards & Richards,* with an oral argument by *Mr. O. R. Richards.*

For respondent there was a brief over the names of *Messrs. Carter & Smythe* and *Messrs. Raley, Raley & Steiwer,* with oral arguments by *Mr. Charles H. Carter* and *Mr. J. H. Raley.*

BROWN, J.—In the case at bar, the findings of fact made by the court are very full. Among the ultimate facts necessary to support the judgment, we find evidentiary facts and conclusions of law. However, this court has said:

"It is sometimes difficult to distinguish between conclusions of fact and conclusions of law, because it may be that a statement of fact cannot be made without including a conclusion, or it may be that a conclusion of law is such that, in the attending circumstances, it must be stated in the form of a statement of fact. 'The line of demarcation between what are questions of fact and conclusions of law is not one easy to be drawn in all cases. * * We deduce the ultimate fact from certain probative facts by a process of natural reasoning. We draw the inference or conclusion of law by a process of artificial reasoning; but this last process is often in such exact accord with natural reason that the distinction is scarcely appreciable. * * If, from the facts in evidence, the result can be reached by that process of natural reasoning adopted in the investigation of truth, it becomes an ultimate fact, to be found as such.'" *Oregon Home Builders* v. *Montgomery Inv. Co.*, 94 Or. 349, 356 (184 Pac. 487).

The issues made by the pleadings present the following questions:

Is the corporation bound by an erroneous date of the certificate of stock issued, sold, and delivered to the plaintiff?

Second, was the sale of stock made to the plaintiff contrary to the terms of the Blue Sky Law (so designated for convenience)?

Third, did plaintiff purchase the stock in reliance upon fraudulent representations of defendants knowingly made?

We give below a synopsis of the facts as found by the trial court. In truth, a knowledge of the facts in this case will dispose of the legal questions presented at the hearing. If, under the rules of evidence, the truth may be adduced relating to the sale of the stock to the plaintiff, the case presents no difficulty.

The Farmers' Union Grain Agency is a corporation organized, owned and controlled by farmers, under the laws of the State of Oregon, with its principal office located at Pendleton. Its directors are R. O. Earnheart, H. J. Rosenberg and W. W. Harrah, and its secretary and treasurer is R. W. Ayers. Prior to the second day of February, 1918, the capital of that corporation was $50,000, consisting of 5,000 shares of the par value of $10 each. On January 17, 1918, 3,708 shares of the capital stock of the corporation had been sold and issued to divers persons, leaving unsubscribed and unissued 1,292 shares thereof. On and prior to January 17, 1918, farmers residing in Athena and vicinity were endeavoring to induce the defendant corporation to build and operate at Athena a grain elevator for the use of the plaintiff Cannon and other citizens of Athena and vicinity. On this date, interested citizens called and held an informal meeting at Athena for the purpose of considering the construction of a grain elevator, at which meeting the plaintiff, with other citizens, was present and took part. The defendants were invited to attend, and did attend, that meeting. At that meeting the plaintiff, Roy Cannon, acting with various other citizens of the neighborhood of Athena, undertook to induce the Farmers' Union Grain Agency to construct a grain elevator at Athena, and as a consideration for such co-operation plaintiff, acting with such

other citizens, in order that funds might be raised
for the purpose of constructing such elevator, assured
the defendants that if the Farmers' Union Grain
Agency would cause its capital stock to be increased
they would subscribe for and take from that corpora-
tion a large amount of its increased capital stock.
The plaintiff, acting with other citizens of his neigh-
borhood then and there present, offered and agreed
to and with the Farmers' Union Grain Agency and
its codefendants that if the capital stock should be
so increased, he would subscribe for 180 shares
thereof at the face value, to wit, $1,800; and a large
number of other persons, then and there being, for
the purpose of inducing the corporation so to increase
its capital stock and to construct an elevator, sub-
scribed for, agreed and promised to pay for a large
number of other shares of such increased capital
stock. As a further inducement, the plaintiff Roy
Cannon, acting with such other persons, and as a
pledge of good faith and as an assurance that they
would subscribe and pay for the increased capital
stock in case such capital stock was increased, pro-
posed and suggested that each subscriber would de-
posit with a committee which they, the subscribers,
would select from the citizens and residents of Athena
and its vicinity, a promissory note, or a check, for
the amount offered to be subscribed and paid for at
the face value thereof. Pursuant to such under-
standing and offer, Roy Cannon executed and deliv-
ered to a committee there selected, his promissory
note for $1,800, which he offered in payment for 180
shares of such increased capital stock, if so increased.
At that meeting it was further understood and prom-
ised by the subscribers to such increased capital stock,
that the notes and checks then signed by them should

be placed and left by the committee with the First National Bank of Athena, Oregon, to be held by it until such time as the Farmers' Union Grain Agency should, through due and regular proceedings, cause its capital stock to be increased and issued; that upon the issuance of such stock and delivery thereof to the First National Bank of Athena in the amounts and for the number of shares respectively agreed upon, then the said notes and checks should be delivered and turned over to the Farmers' Union Grain Agency; but in the event that the corporation should not succeed in increasing its capital stock, or should not issue and deliver to the bank such shares of increased stock, then and in that event the notes and checks would be returned to the respective parties who had executed them. Charles Kirk, George Gerking and A. R. Coppock were selected as the committee to receive and deposit with the bank the notes and checks of subscribers, which they did.

Pursuant to the conditional agreement to purchase stock, the directors of the defendant corporation regularly held a meeting at its office in Pendleton, Oregon, on the nineteenth day of January, 1918, called a special meeting of the stockholders and took all steps necessary to increase the capital stock of the corporation from $50,000 to $200,000.

On February 2, 1918, the corporation commissioner of the State of Oregon issued to the defendant corporation a certificate of increase of its capital stock from 5,000 to 20,000 shares, and from $50,000 to $200,000 capital. On February 18, 1918, the defendant corporation caused to be issued to plaintiff Roy Cannon its certificate numbered 418 for 180 shares of the increased capital stock of the corporation and of the value of $1,800. Thereupon, the First Na-

tional Bank of Athena, acting for plaintiff, received and accepted certificate of stock numbered 418, dated January 17, 1918, and in payment therefor surrendered and delivered to the defendant corporation plaintiff's note for $1,800, face value, dated January 17, 1918 (date of the meeting at Athena), with interest from that date. The certificate of stock so issued and delivered to plaintiff was dated back to January 17, 1918, in order that any dividends or profits accruing upon the stock between January 17, 1918, and the eighteenth day of February of that year, the date of its issuance and delivery, might be received by the holder thereof as an offset against any interest that might accrue upon his note between the date of its face and that of its delivery. Certificate of stock numbered 418 was issued and delivered to, and accepted by, plaintiff Roy Cannon in pursuance of his offer to subscribe for and take the same if the stock of the defendant corporation should be so increased. This certificate of stock was taken and accepted by him after the corporation had increased its capital stock and was of the exclusive issue of the increased capital stock of the corporation. It was not sold to him at a profit, nor on commission, neither was it offered for sale to the public. After receiving his certificate of stock, plaintiff voted the shares thereby represented at subsequent meetings of the stockholders. Moreover, plaintiff had full knowledge of all things done and transacted by the corporation, and at no time made any objection or offered any remonstrance relating to the stock or to the increase or the validity thereof, until this action was commenced; and the defendants, relying upon the offer, acts and promises of Roy Cannon as above stated, acted thereon and issued the increased stock

of the corporation, proceeded to build an elevator plant at Athena, and expended a large sum of money, amounting to more than $50,000, in the construction and equipment thereof. Neither the defendants, nor any of them, made any false representations to plaintiff, or to any one, respecting the issuance of the stock or the sale thereof. Plaintiff was not fraudulently induced to give credit to the corporation, or induced to purchase the stock; neither did plaintiff act upon any representations or official acts or conduct of the defendants to his damage in the sum of $1,800, or in any other sum whatsoever.

On the seventeenth day of January, 1918, the corporation was unable to pay dividends, but it was not unable to pay its debts, was not being operated at a loss, was not indebted to W. W. Harrah, R. O. Earnheart or H. J. Rosenberg, its directors. Neither were the defendants, or any of them, on that date, trying to sell stock in the corporation or to raise money by the sale of stock to pay themselves, or to relieve themselves from any liability upon any negotiable paper that the corporation had issued. Further, the codefendants of the corporation were in no manner liable for any debt of the defendant corporation.

The plaintiff did not, on the twenty-fifth day of October, 1919, first, or at all, discover that the representation made by the defendants, or any of them, was false, or that at the time the stock was issued and sold to plaintiff by the defendants the corporation did not own the stock. The plaintiff did not, on the twenty-fifth day of October, 1919, first, or at all, discover that he had been deceived by the defendants in the manner alleged in his complaint. The stock sold to plaintiff was not in excess of the number

of shares which the defendants were allowed to issue and sell at the time such stock was sold to plaintiff, and none of the defendants misstated or concealed any fact mentioned or alleged by plaintiff which materially, or at all, affected the value of the stock of the corporation, and the defendants have not perpetrated any fraud upon the plaintiff.

1. The findings of the court upon the facts shall be deemed a verdict. The court's findings of fact may be set aside in the same manner and for the same reasons as far as applicable, and a new trial granted: Section 159, Or. L.; *Kyle* v. *Rippy,* 19 Or. 186 (25 Pac. 141); *Flegel* v. *Koss,* 47 Or. 366, 370 (83 Pac. 847); *Lewis* v. *Clark,* 66 Or. 461, 463 (134 Pac. 1194); *Warren* v. *Dinwoodie,* 88 Or. 342, 344 (171 Pac. 1175); *Bailey* v. *Hickey,* 99 Or. 251, 256 (195 Pac. 372). In construing this section of the statute, this court has held over and over again that such findings made by the trial court cannot be set aside on appeal, provided there is any competent evidence to support them: *Salem Traction Co.* v. *Anson,* 41 Or. 562, 570 (67 Pac. 1015, 69 Pac. 675); *Van de Wiele* v. *Garbade,* 60 Or. 585 (120 Pac. 752); *Sun Dial Ranch* v. *May Land Co.,* 61 Or. 205, 218 (119 Pac. 758); *Norman* v. *Ellis,* 74 Or. 168 (143 Pac. 1112); *Morris* v. *Leach,* 82 Or. 509 (162 Pac. 253); *Warren* v. *Dinwoodie, supra.*

2. The court found that certificate numbered 418, representing 180 shares of stock sold by the defendants to Cannon, was not an overissue, but was of the increased issue of the capital stock of the defendant corporation and was issued and delivered in accordance with a previous conditional subscription or offer made by Cannon on January 17, 1918, for a block of the increased capital stock of the corporation. This finding

is bottomed upon competent evidence and is binding upon us, regardless of any evidence to the contrary.

Stock certificate numbered 418 was incorrectly dated. However, the plaintiff was not deceived thereby. That a writing is truly dated is not a conclusive, but a disputable, presumption of evidence: Section 799, par. 23, Or. L. The court was clearly within the law in holding that the true date of the certificate of stock could be established by parole.

This is not a case where the minutes of a corporation are being contradicted by parole. No minutes were kept, nor was there made any written record of the conditional subscription or offer of the plaintiff and his associates to purchase the stock of the defendant corporation. Again, the minutes of subsequent meetings do not show the date of the issuance of certificate numbered 418.

"The doctrine is now almost universally recognized that parol evidence is admissible to prove the unrecorded acts and transactions of the corporate body, or of its board of directors. * *   It necessarily follows, then, that the acts of corporations, in the absence of a record, may be proved by the testimony of competent persons. And where no minutes are kept of the proceedings of a meeting, they may be proved by parol." 2 Thomp. Corp., § 1847.

3. The United States court, in a very instructive case, held that most corporate acts can be proved as well by parol as by written entries: *Handley* v. *Stutz*, 139 U. S. 417 (35 L. Ed. 227, 11 Sup. Ct. Rep. 530, see, also, Rose's U. S. Notes). In the case of *German Ins. Co.* v. *Independence School District,* 80 Fed. 367 (25 C. C. A. 492), and based upon the doctrine enunciated in *Handley* v. *Stutz, supra,* evidence was admitted showing the proceedings of a school board which were not recorded. In the absence of a

record, the acts of corporations may be proved in the same manner as the acts of individuals, and, if no direct evidence can be adduced, facts and circumstances may be proved from which the acts may be inferred: *Moss* v. *Averill,* 10 N. Y. 449. The authorities holding that parol evidence may be introduced to show matters not of record are many: 4 Fletcher, Cyc. Corp., p. 4052.

"Where the minutes contain a record of action taken, it will be presumed, *prima facie,* that the record covers the entire action. This is not conclusive, however, and parol evidence may be introduced to show what was in fact done. Furthermore, if it is apparent upon the face of the minutes that they are incomplete, they cannot be treated as conclusive evidence of what transpired." 4 Fletcher, Cyc. Corp., p. 4054.

The plaintiff alleges that defendants sold him stock of their own issue without obtaining a dealer's permit from the corporation commissioner of the State of Oregon, and that for that reason the sale is void. The findings of the court are to the effect that the defendant corporation was not a dealer within the meaning of the Blue Sky Law, when engaged in its transaction with plaintiff. The court found that the stock was not sold to Cannon at a profit or on commission, nor was that stock offered for sale to the public.

Looking to the Blue Sky Law of Oregon for the definition of "dealer," we have:

"The word 'dealer' within the meaning of this act, shall include every * * corporation which is now engaged, or which shall hereafter engage in the selling to others at a profit or on commission * * any stocks, bonds, notes, contracts or other securities of whatsoever kind or character * * . And, provided further, that any * * domestic corporation * * doing

business within this state * * which shall hereafter offer its own securities for sale to the public, shall be considered a dealer within the meaning of this act.'' Section 6838, Or. L.; Section 1, Chapter 324, Laws 1915.

The court found, and is abundantly supported by the evidence that the defendants made no fraudulent representations to the plaintiff.

The case is affirmed.

AFFIRMED.   REHEARING DENIED.