Argued January 23, affirmed March 20, 1923.

## COAST FIR LUMBER CO. *v.* PARKER et al.

### (213 Pac. 617.)

**Evidence—Evidence Explaining Meaning of "Terms Regular" in Lumber Sales Contract Held Competent.**

1.   Where lumber was sold under a sales contract which provided for "terms regular," evidence explaining, by proof of usage, the meaning of those terms was competent.

**Evidence—Evidence Explaining Term "Two Cars" in Lumber Sales Contract Held Admissible.**

2.   In action for breach of contract for the sale of two cars of lumber, evidence explaining what was meant in the lumber trade and usage by "two cars" of the dimension material of the contract was competent.

**Appeal and Error—Receiving Confirmation Order as Evidence not Prejudicial Error in View of Instruction.**

3.   In buyer's action for breach of a sales contract for lumber, where defendant admitted the existence of a contract order, but the principal issue was as to the time of payment, the order providing for "terms regular," admitting a confirmation order which spelled out the meaning of that term, was not prejudicial to defendant, in view of an instruction that it was not admissible to contradict or add to the terms of the original contract on which the action was based, but only as evidence to show how the parties dealt and acted in reference thereto.

From Polk.   H. H. Belt, Judge.

Department 1.

This is an action brought by the Coast Fir Lumber Company, a corporation, against T. T. Parker and Gordon M. Parker, partners doing business under the firm name of T. T. Parker & Son, for damages resulting from the breach of contract for the sale of lumber.

The plaintiff has its place of business in Portland, this state, and it is engaged in the wholesale lumber business.   The company is "in touch with all eastern markets"; and it secures orders for lumber in these

markets and then places the orders "with different mills here in western Oregon."

The partners own a sawmill located about two miles from Pedee, a station on the Valley & Siletz Railroad. This railroad connects with the Southern Pacific "main" line at a station called Crisp; and this station is about five miles from Pedee.

On November 24, 1919, George E. Miller, representing the company called at the sawmill and negotiated with T. T. Parker, as the representative of the partners, for two carloads of lumber. The negotiations terminated in an agreement. As evidence of the agreement a writing was prepared. Using a printed form, Miller with a lead pencil wrote in some of the blank spaces, and T. T. Parker in behalf of the partners then signed the instrument which Miller had prepared in duplicate. Miller kept the carbon copy and delivered the original or pencil copy to Parker. The following is a transcript of the instrument; and in order to distinguish the printed from the written words the latter are italicized.

"Order No. *3639.*                    Date *Nov. 24, 1919.*
M  ·  *Parker and Son.*              *Airlie.*
Ship to *Coast Fir L. Co.*
At·     *Laurel  Mont.*
How Ship      Terms *Regular*       When *60 days.*
Sal⟨ nan                            Buyer
*2 cars 4″x6″—16′ to 24′.*
*#1 com. rough f. o. b. main line net*          $20.00
     *Order accepted by*
                              *T. T. Parker & Son.*
                              *By T. T. Parker.*"

Miller, upon returning to Portland, caused to be written to the defendants, in behalf of the corporation, a letter dated November 28, 1919, which is referred to in the record as the confirmation order and is in part and so far as material here as follows:

"Order.

Coast Fir Lumber Company.

Pacific Coast Timber Products.

Order No. *3639*.  Customer's No.  Portland, Oregon,
*Nov. 28, 1919.*
Placed with *Parker & Son,*.  *At Airlie, Oregon.*
Ship to *Order of Coast Fir Lumber Co., At Keiths-
burg, Ill.*
Route *SP OW OSL UP CB&Q.*
Wanted *Within 60 days* Rate.
Terms, grades and weights adopted by West Coast
Lumbermen's Association to govern on this order.
*2 cars 4x6—16 to 24' #1 Common Fir Rough $20.00 M.
No Comm.*
*Price f. o. b. cars Main Line.*
*Guaranteed weight 3300#.*
*Must be strictly #1 Common, evenly cut and ends
trimmed.*
*Terms:—90% Advance less 2% discount.*
*As per order given you by our Mr. Geo. Miller and
accepted by you Nov. 24th.*"

The italics are ours and are used to distinguish
the typewritten from the printed words.

The plaintiff mailed letters concerning the lumber
to the partners on December 23, 1919, January 19,
and February 20, and April 8, 1920.   It is not claimed
that the defendants addressed any letters or written
communications to the plaintiff relative to the confir-
mation order, or in answer to any of the letters, or
otherwise.

Early in January, 1920, Miller called at the mill.
It appears from the record that on this occasion T. T.
Parker represented to Miller that the weather condi-
tions had been such that the defendants had been un-
able to fill the plaintiff's order; and it also appears
that Miller was satisfied with the excuse and told
Parker that if necessary he could have more than

the 60 days prescribed in the instrument of November 24, 1919, within which to fill the order.

On April 7, 1920, Miller again visited the mill to ascertain why defendants had not delivered any lumber. The market price of lumber of the kind called for in the contract had raised and on January 24, 1920, and afterwards, according to all the competent evidence on the subject of market value, the price was $28 or more per thousand feet. Miller asserts that, on the occasion of this visit, T. T. Parker complained that the brokers and wholesalers "bought lumber cheap from the small mills and waited until the price advanced and then sold it for big prices," and said that he would not deliver the lumber at all for $20 per thousand.

The version of the April 7th conversation given by Parker explains the position of the defendants. It appears that the County Court had issued an order effective until May 1, 1920, which so restricted the use of the roads by the defendants that they could not haul lumber to Pedee. Parker says that he told Miller "we will deliver that lumber after May 1st," and that Miller expressed satisfaction and stated that the plaintiff would accept the lumber at that time; and thereupon, according to the testimony of Parker, "I said, 'we want our money when that lumber is delivered.'"  The plaintiff takes the position that it was not under obligation to pay at the time of delivery.

The plaintiff began this action by filing a complaint on July 31, 1920. The third amended complaint, upon which the action was tried, sets out the instrument of November 24, 1919, and, among other allegations, contains the following:

"That 'Parker & Son' named in said order was and is the same firm and copartnership as T. T. Parker

& Son who accepted said order and are the defendants in this action, and that 'Coast Fir L. Co.' named in said order was and is Coast Fir Lumber Company, a corporation, plaintiff in this action, and that the words 'Terms regular' written in said order, meant that plaintiff would pay defendants ninety (90) per cent of the contract price of said lumber within fifteen (15) days from date of invoice and bill of lading therefor, less two (2) per cent of such amount, and that the remaining ten (10) per cent of the price of such lumber, less two (2) per cent of such remainder, would be paid within sixty (60) days from the date of such invoice and bill of lading, and that the term '60 days' written in said order meant that such lumber should be delivered to plaintiff by defendants within sixty days from the date of said order, and that the description of the subject matter of said order, viz., '2 cars 4″x6″—16′ to 24′ #1 Com. Rough' meant two carloads of number one, common, rough fir lumber, 4 inches by 6 inches in breadth and thickness and from 16 feet to 24 feet in length, and that the expression 'f. o. b. main line net $20' meant free on board the cars on the main line of the Southern Pacific Company's railroad at a shipping point convenient to the sawmill of said defendants, viz., Crisp Station, near Airlie, Oregon, at a price of $20 per thousand feet for such lumber to said defendants, without commission to plaintiff, and that the words, expressions and figures hereinbefore in this paragraph quoted were each and all recognized and understood by plaintiff and defendants at the time said order was given and accepted, as aforesaid, to have the meanings, respectively, as hereinbefore alleged.''

''That by general and uniform custom and usage prevailing in the lumber trade in Western Oregon at the time of making said contract of sale, and then and for many years prior thereto known to and recognized by plaintiff and defendants and all persons engaged in the lumber trade and business in Western Oregon, a car of lumber consists of twenty-five thousand feet, and 'regular' terms on an order from a lumber dealer to a lumber manufacturer means that

the purchaser shall pay the seller ninety (90) per cent of the contract price of such lumber within fifteen (15) days from the date of invoice and bill of lading therefor, less two (2) per cent of such amount, and that the remaining ten (10) per cent of the price of such lumber, less two (2) per cent of such remainder, shall be paid within sixty (60) days from the date of such invoice and bill of lading, and that said contract was made in recognition of said customs and usages.''

Besides admitting the corporate character of the plaintiff and the relationship of the defendants, the answer admits that the defendants accepted an order in accordance with the terms of the order set forth in the complaint,—

''in all particulars, except that said lumber was not to be a greater length than 16 feet, and admits that defendants did not deliver any lumber under said order, and denies that said lumber was to be 24 feet long or any greater length than 16 feet and denies each and every allegation in said complaint, and especially denies that a carload of lumber consists under any custom or usage of from 25,000 to 30,000 feet or any other definite number of feet.''

The plaintiff demanded a judgment for $400; but a trial terminated in a verdict for the plaintiff for $200, and the defendants appealed from the consequent judgment.    Affirmed.

For appellants there was a brief and oral argument by *Mr. Frank Holmes.*

For respondent there was a brief over the names of *Mr. Oscar Hayter* and *Mr. Maurice W. Seitz,* with an oral argument by *Mr. Hayter.*

HARRIS, J.—1. The defendants complain because the court permitted George E. Miller to testify as to

the meaning of: "Terms *regular*," and "when *60 days*," found in the instrument of November 24, 1919. In substance, the witness explained that the terms mentioned had respectively, according to general and uniform usage of the lumber trade, certain, definite and universally understood meanings, and that these meanings were as alleged in the complaint. Miller explained that in preparing contracts the word "regular" is sometimes used, at other times "90% advance" is employed, and sometimes the words "West Coast" are written, but that they all mean the same thing, and that by usage of trade the words had the meaning attributed to them. This witness was corroborated by other witnesses. There was an abundance of evidence to sustain findings that "terms *regular*" and "when *60 days*" then meant and now mean what the plaintiff alleges they mean. At the trial the defendants objected to evidence concerning the meaning of "terms *regular*," because "the parties are bound by the ordinary acceptation of these words; unless 'terms *regular*' had a peculiar signification and that signification was known to the defendants"; and when the court asked the attorney for the defendants what he thought the words meant, he answered: "I don't think it means anything in this case."

The defendants objected to Miller's testimony explaining the meaning which the usage of the lumber trade gave to the words, "when *60 days*," on the ground that "the testimony is not competent to explain what the words mean, because it is apparent what they mean."

The ground relied upon by the defendants in their assignments of error and in their printed brief for the objection to evidence explaining the meaning of "terms *regular*," and "when *60 days*" is that such

testimony tended to vary the terms of the written contract. The court was of the opinion that the quoted words were ambiguous and for that reason permitted the evidence to be received.

There is a vast difference between contradicting or varying the plain and ordinary meaning of words by proof of usage and explaining, by proof of usage, the meaning of words which, because of their position in a writing and without explanation, are indefinite, uncertain and ambiguous. Obviously the words "terms *regular*," when standing alone, of themselves suggest ambiguity and the necessity for explanation. The defendants contend in their printed brief that they are meaningless. Any person who is not familiar with the nomenclature of lumbermen will immediately, upon reading the instrument, assume and recognize the fact that the words now under discussion have a meaning known to and understood by lumbermen, even though not known to him; for the words "terms *regular*" imply that there are regular terms governing such sales. The testimony of Miller and that of the corroborating witnesses did not vary the terms of the contract; but upon the contrary the testimony explained the meaning of the terms. The testimony did not contradict or conflict with any of the words in the contract. The instrument was prepared by lumbermen and naturally they employed the language of lumbermen. The challenged evidence was received as a means of interpreting the contract and not for the purpose of importing new terms into it or for the purpose of varying terms already in it. With the evidence of Miller and that of the corroborating witnesses the language of the contract is clear; but without such evidence it is ambiguous. The plaintiff complied with every rule prescribed for the reception of evidence concerning trade usage and

custom: *Barnard & Bunker* v. *Houser,* 68 Or. 240, 243 (137 Pac. 227); *Holmes* v. *Whitaker,* 23 Or. 319, 323 (31 Pac. 705); *Savage* v. *Salem Mills Co.,* 48 Or. 1, 11 (85 Pac. 69, 10 Ann. Cas. 1065); *Yreka Lumber Co.* v. *Lystul-Stuveland Lumber Co.,* 99 Or. 291, 297 (195 Pac. 378); *Simms* v. *Sullivan,* 100 Or. 487, 492 (198 Pac. 240, 15 A. L. R. 678). The testimony of Miller was competent. The court adequately and correctly charged the jury upon the subject of usage; and there was no error in the instructions given or in the refusal to give instructions requested.

2. Over the objection of defendants, Miller was permitted to explain "what is meant in the lumber trade and usage by two cars of such dimension material as is mentioned in this contract." The testimony given by Miller corresponded with the allegations in the complaint. At the trial the defendants objected on the ground that it "is not competent to explain the meaning of the terms referred to in the question." In their assignments of error the defendants assert that the ruling of the court was erroneous, because the testimony tended to vary the terms of the contract. The defendants also contend in their brief that in order to recover damages "the injury or damages must be certain"; but that

"the contract does not specify any determinable amount of lumber required under the contract to be delivered; and hence there is no way under the contract to determine any amount of lumber to be delivered, taking the difference between the contract price and the market price as the basis to figure from."

The uncontradicted evidence is that a thousand feet of green lumber of the kind involved here weighs about 3,300 pounds; and this is also the estimated weight adopted by the West Coast Lumbermen's Association. Cars vary in size and capacity, and

consequently some cars will carry a greater weight and therefore more lumber than others. The capacity of some cars is 100,000 pounds while others will carry 80,000 pounds and still others 60,000 pounds; and there is some evidence to the effect that the capacity of the smallest car is about 30,000 pounds. In this situation it was peculiarly appropriate for the plaintiff to show what, by the usage of the trade, was meant by "2 cars" of lumber. In *Bullock* v. *Finley,* 28 Fed. 514, it was held in an action for "three carloads of brewers' rice," that where it did not appear that the contracting parties had agreed to the quantity to make a carload, the custom of the trade fixed the quantity. In 35 Cyc. 210, the rule is stated thus: "Where the goods are sold by the 'carload' the term may be construed by the custom of trade." In 2 Elliott on Contracts, Section 1731, the author states:

"Where the question involved in an action for breach of a contract for furnishing commodities in carload lots is the capacity of a car, it is proper to receive evidence as to the usage among railroad men and shippers in respect to the commodity involved. Such evidence is received to explain and not to vary the contract."

The court instructed the jury at length upon the subject of usage in connection with the meaning of "2 cars"; and, among other instructions, the court advised the jury:

"If you believe from the evidence that there is no definite or fixed amount of lumber to be sold as fixed by trade usage or custom, then the court instructs you as a matter of law that the contract is unenforceable by reason of it being incomplete. If you believe trade usage and custom does fix it, then the plaintiff is entitled to recover, if you believe from the greater weight of the evidence that there has been a breach of the contract as alleged by plaintiff on the part of

defendants and that it has been ready, able and willing to pay upon delivery of the lumber.''

This instruction was more favorable to the defendants than they were entitled to ask; for even though there is no usage of the trade determining the quantity to be delivered under a contract calling for a definite number of carloads of a given commodity, the courts will not declare such a contract void for uncertainty.   Damages will be allowed for a refusal to deliver; but under some authorities the damages will be computed on the amount usually contained in an ordinary car   (*Seefeld* v. *Thacker*, 93 Wis. 518 (67 N. W. 1142); *Bullock* v. *Finley*, 28 Fed. 514; 35 Cyc. 639); while other precedents hold that the contract is binding at least for the number of cars of the smallest capacity: *Indianapolis Cabinet Co.* v. *Herrman*, 7 Ind. App. 462 (34 N. E. 579).

The testimony of Miller explaining the term ''2 cars'' was admissible.   It was competent to show what the term meant in the light of trade usage: *Goode* v. *Chicago, Rock Island & Pacific Ry. Co.*, 92 Iowa, 371 (60 N. W. 631); *Floyd* v. *Mann*, 146 Mich. 356 (109 N. W. 679).

3. The defendants argue that it was reversible error to receive the confirmation order as evidence.   At the trial the defendants objected to the confirmation order on the ground that it was not the contract sued on; that it contained language different from that in the contract upon which the action was based as well as language not found at all in the contract set up in the complaint.   The plaintiff offered the confirmation order on the theory that it did not vary the terms of the contract but simply amplified it and ''is strictly in accordance with the testimony that it confirms this memorandum order accepted and signed by Parker & Son.''   The court held and specifically instructed

the jury that the confirmation order was not admissible for the purpose of contradicting or adding to the terms of the original contract upon which the action is based, but that it was received as evidence merely for the purpose of showing how the parties dealt and acted in reference to the original contract.

It must be remembered that the complaint is based upon the instrument of November 24, 1919, and that the defendants admitted in their answer that they accepted the order set forth in the complaint. It is true the answer alleges that the lumber was not to be of a greater length than 16 feet, but it is also true that T. T. Parker explained this allegation by testifying on April 12, 1921, the date of the trial, that although he thought he knew what was in the order he "didn't know the '24 foot' was in that order until the other day." In short the plaintiff alleges and the defendants admit that the latter accepted the order of November 24th, although, in the language of the defendants used in their printed brief, "the legal effect of the order is denied by the answer." It is true that in their printed brief the defendants contend that the order of November 24th is void because of the uncertainty; but it is also true that the issues made by the pleadings relate to the meaning and legal effect of the instrument of November 24th, and the affirmative matter pleaded in the answer as a further and separate defense assumes the existence of a valid and legal contract. It is not now necessary to decide whether the defendants were bound to deliver lumber "evenly cut and ends trimmed" because that question is not here for decision; but it is a noteworthy fact that the defendants did not object to any statement contained in the confirmation order, and both the defendants and the plaintiff recognized that they had entered into a contract and that the contract so en-

tered into was evidenced by the writing of November 24th: See *Shaw Wholesale Co.* v. *Hackbarth,* 102 Or. 80, 100 (198 Pac. 908). Indeed, T. T. Parker testified that the defendants intended to make delivery until the dispute arose between him and Miller on April 7th with reference to the time of payment. The position of the defendants, according to the testimony of T. T. Parker, was on April 7, 1920, that they had previously made a contract but that they were discharged from fulfilling it because the plaintiff on April 7, 1920, expressed a refusal to pay concurrently with delivery. The position of plaintiff is that the provision ''terms *regular*'' gave it a prescribed time after delivery within which to pay. This was the principal issue in the controversy. The confirmation order contains language which was directly relevant to the words used in the order of November 24th. The confirmation order spells out the meaning of the words ''terms *regular*'' and of the words ''when *60 days*''; and in view of the limitations fixed by the court upon the use of the confirmation order as evidence, the defendants could not in any view of the case have been prejudiced. The finding of the jury upon the question of the time of payment was for the plaintiff; and therefore payment and delivery were not concurrent acts to be performed simultaneously.

The defendants knew that the plaintiff was buying the lumber to resell; and the defendants were not affected by any change in the ultimate destination of the lumber.

The conclusions thus far expressed necessarily dispose of all of the remaining contentions of the defendants adversely to them; hence the judgment is affirmed.                                      Affirmed.

McBride, C. J., and McCourt and Rand, JJ., concur.