Argued April 2, affirmed May 20, rehearing denied June 17, costs retaxed July 1, 1924.

# M. LOWENSTEIN & SONS v. NOON BAG CO.

### (226 Pac. 222.)

**Appeal and Error—Findings of Circuit Court in Law Action have Force of Verdict.**

1. Findings of Circuit Court in law action have force of verdict.

**Appeal and Error—Judgment Affirmed if Evidence Supports Findings.**

2. If evidence supports findings of Circuit Court in law action, judgment will be affirmed.

**Sales—Telegrams and Letters Held not to Constitute Contract for Sale of Goods.**

3. Letters and telegrams *held* not to constitute sale of goods through broker.

**Customs and Usages—Language of Contracts Explained by Oral Testimony Without Pleading Custom and Usage.**

4. Language of contracts may be explained by oral testimony without pleading custom and usage.

**Customs and Usages—Testimony Never Admissible to Prove Custom or Usage to Modify Contract.**

5. Testimony is never admissible to prove custom or usage as authority for modifying contracts.

**Brokers—Unauthorized to Vary or Change Terms of Sale Fixed by Principal.**

6. Broker is agent with limited authority, unauthorized to vary or change terms of sale fixed by principal.

**Frauds, Statute of—Unsigned Entry in Book of Seller's Brokers Held not to Take Contract Out of Statute.**

7. Where entry of memorandum of sale of cotton sheeting in merchandise broker's book was not subscribed, either by principals or broker, it was not sufficient to take alleged sale contract out of statute.

**Appeal and Error—Question of Fact Held Conclusive on Appeal.**

8. Question of motive and intent as manifested by letters and telegrams in alleged contract for sale of cotton sheeting was one of fact, and decision against seller is conclusive.

---

3. Whether telegram is writing to make a contract within the statute of frauds, see note in 50 L. R. A. 240.

5. Admissibility of custom to create an exception to written contract, see note in 3 L. R. A. (N. S.) 248.

From Multnomah: W. N. Gatens, Judge.

Department 1.

This is an action at law instituted to collect damages for breach of an alleged contract to purchase a carload of cotton sheeting. The defendant, Noon Bag Company, is a corporation having its office and principal place of business at Portland, Oregon. Negotiations were begun between it and O. C. Bynum of San Francisco, California, who was the western representative of M. R. Jacobs & Bros., Inc., of New York City, merchandise broker. The alleged purchase was made by the firm of M. R. Jacobs & Bros., Inc., from M. Lowenstein & Sons, Inc., the plaintiff, who is also a broker in New York City. All the negotiations were conducted by wire and letters. The following is the complete record of the communications between the several parties mentioned.

On September 17, 1920, the defendant sent the following letter to O. C. Bynum:

(1)

"Replying to yours of the 13th would advise that we are not interested in the 36″ 48x40 5.50 yard, on which you indicated a price of 11 cents.

"It occurred to us to inquire what could be done on a car of 31″ 48x48 5 yard for March shipment. If you are able to procure a price on this basis kindly communicate with us."

On September 20, 1920, O. C. Bynum wired M. R. Jacobs Bros., Inc., 320 Broadway, New York City, as follows:

(2)

"Noon will consider car orchard (31″ 48x48 5 yards to point) March wire lowest hurry Western."

On September 21, 1920, O. C. Bynum received a telegram from M. R. Jacobs & Bros., Inc., reading as follows:

(3)

"First hands asking Claritude (11 3/4c) to classic (12c) orchard (31″ 48x48 5 yards to point). Can buy second hands Clark (11½c) January will try March orb coaxing (37″ 48x48 4 yards 14c). Generally asking classic (12c) for optics (36″ 48x48 40 5¼ submit Clark 11½) ochre (48x48 40″ 2.85) are cheap at concern to condemn (17½c to 18c) can buy second hands half million yards oriacle complexity (40″ 56x60 3.60 17c) quote larboard 38½c (44x40 8.20) probably cinnabar (9¼c)."

On September 21, 1920, O. C. Bynum wired Noon Bag Company, as follows:

(4)

"Your letter seventeenth first hands asking eleven three quarters to twelve cents can secure second hands eleven one-half January will try March on firm offer. Answer promptly."

On September 23, 1920, the Noon Bag Company wired O. C. Bynum as follows:

(5)

"Referring your wire twenty-first you may buy one carload five yard March eleven cents for reply Saturday noon."

On September 23, 1920, O. C. Bynum wired M. R. Jacobs & Bros., Inc., 320 Broadway, New York City, as follows:

(6)

"Noon authorizes buy car orchard (31″ 48x48 5.00) March 11c before Saturday noon."

On September 24, 1920, M. R. Jacobs & Bros. Inc., wired O. C. Bynum as follows:

(7)

"Bought carload about bonding orchard (250,000 yards 31″ 48x48 5 yards) March clamor (11c) for Noon from Lowenstein market easier."

On September 24, 1920, O. C. Bynum wired the Noon Bag Company as follows:

(8)

"Answering bought carload about two hundred and fifty thousand yards five yard March eleven cents."

On September 24, 1920, O. C. Bynum wrote a letter to the Noon Bag Company as follows:

(9)

"Your telegram received authorizing purchase of carload of 31" 5.00 yd Sheeting for March at 11c and I am pleased to report that we have secured same and have wired you to this effect, as per confirmation of telegram enclosed.

"I wish to thank you for this business and hope to hear from you whenever you are open for sheetings and will give you the best service possible.

"Am offering 37" 48x48 4.00 yard today at 13½c for October, November, December, 36" 48x40 5.50 yd. at 11¼c'—perhaps shade lower available. Market easier."

On September 24, 1920, the Noon Bag Company wrote a letter to O. C. Bynum as follows:

(10)

"We take this opportunity of confirming exchange of telegrams between us particularly yours of the 21st wherein you advised that you would try and obtain a carload of 5 yard for March with a firm offer. With this before us we wired you yesterday such an offer for reply Saturday noon and were somewhat surprised in view of your advices that first hands were asking from 11¾ to 12c and second hands 11½c for January shipment, to have our firm offer confirmed as per your telegram this morning reading:

"Answering bought carload about 250,000 yards 5 yard March 11c.

"We hardly understand the quantity being specified at 250,000 yards as the minimum carload weight is 40,000 lbs. which would require only 200,000 yards of 31″ 48x48 5 yard.   We are enclosing herewith our formal order No. 44 to cover this purchase and in the meantime await your advices as to the seller and the shipping point.

"However, we are pleased to have concluded this business with you at this particular time, and are"

In said letter of September 24, 1920, from the Noon Bag Company to O. C. Bynum, the Noon Bag Company inclosed its purchase order No. 44, reading as follows:

(11)

"Purchase Order No. 44.
"Noon Bag Company,
"32–34 First Street, North.
        "Portland, Oregon, Sept. 24, 1920.

To
Of
Through O. C. Bynum, San Francisco, California. B52682.   Our Order Number must appear on each invoice.

| Quantity. | Description. | Price. |
|---|---|---|
| 1 carload | 31″ 48 x 48 5.00 yard | 11c |
| Invoice | B/L | Received |

For Shipment March, 1921.
From           To
Route
Terms—Net 10 days
F. O. B. Cars
Freight (Rate)
        allow

        "Noon Bag Company."
        "By J. T. Armstrong."

On September 24, 1920, M. R. Jacobs & Bros., Inc., wrote a letter to the Noon Bag Company as follows:

(12)

"Enclosed please find sale note No. 5162 covering your purchase of one carload of 31″ 5.00 sheetings, from Messrs. M. Lowenstein & Sons. Thanking you for the order, we are."

The sale note No. 5162 inclosed in said letter is in words and figures as follows:

(13)

"M. R. Jacobs & Bros., Inc., Brokers,
    "Cotton Goods and Print Cloth,
        "320 Broadway, New York.
  "Sold for account Messrs. M. Lowenstein & Sons, 40 West 23rd St., New York City.
  "No. 5162.   Date—September 24th, 1920.

| Quantity and Quality Style | Width in Inches | Picks Square inch | Yard. Pound |
|---|---|---|---|

1 carload
abt. 200,000 1st 31 48/48   5.00
yds. sheetings        Southern make.
Sold to Noon Bag Co., Portland, Oregon.
Terms Net 10 days.
Delivery F. O. B. Mill.
Shipping instructions later.
Shipments March, 1921.
  "Goods to be woven as far as practicable in double cuts.
  "If the production of the Southern Mill shall be curtailed during the time above named by strikes, or lockouts to counteract strike, or any unavoidable casualty, the deliveries shall be made proportionate to the production.

"To Noon Bag Co.
"M. R. Jacobs & Bros. Inc., Brokers, M. G. Shapiro.
  "Please detach this receipt, sign and return.
                           "September 24th, 1920.
"Received from M. R. Jacobs & Bros. Inc.
  "320 Broadway, New York.

"Sales Note No. 5162 which we have examined and confirm.

"Quantity 1 carload (Abt. 200,000 Yds.)

"Construction 31" 48/48 5.00 Sheetings.

"Signed ————————————.

"By ————————————.""

The above letter with sale note inclosed was received by the Noon Bag Company after the exchange of letters with O. C. Bynum above referred to, which last-mentioned letters were written prior to any notice to the Noon Bag Company of the conditions of the sale note.

On September 24, 1920, M. R. Jacobs & Bros., Inc., wrote a letter to Messrs. Lowenstein & Sons, Inc., reading as follows:

### (14)

"Enclosed please find sale note No. 5162 for 1 carload of 31" 5.00 sheetings sold to Noon Bag Co. Thanking you, we are"

The testimony of Morris G. Shapiro, when said Shapiro representing M. R. Jacobs & Bros., Inc., took up with M. Lowenstein & Sons, Inc., the negotiations for purchase of said sheeting is that Lowenstein in offering to sell, using his own words, said:

"He said 'I will take them for Noon Bag Company, Portland, Oregon,' and I answered, 'It is a sale, send me a sale note.' The next day I received the sale note." (Dep. Abram L. Lowenstein Direct Interrogatory No. 6.)

The offer to purchase made by the Noon Bag Company was unconditional as to delivery. The sale note, when delivered to the Noon Bag Company by M. R. Jacobs & Bros., Inc., showed upon its face that

the delivery of the goods was subject to production of Southern mills.

On September 27, 1920, O. C. Bynum wrote to the Noon Bag Company as follows:

(15)

"Your favor of the 24th inst. received enclosing formal order No. 44, for which please accept thanks.

"I note that you were somewhat surprised at our being able to execute your order at the price under the circumstances existing at the time, but we found the goods in second hands and landed them at our figure.

"This also possibly accounts for the yardage as goods in second hands are liable to be figured on in round yardage lots without close reference to minimum carload weights. Also, all of our business recently on 5.50s, in which we have done a quite satisfactory volume, has been done in units of 250,000 yds. and multiples thereof.

"Thanking you and hoping to have frequent opportunities to execute your orders, I remain

"Yours very truly,

"O. C. BYNUM.

"Market is weak today; 37″ 4.00 yd. can be had at 13c for futures; 36″ 5.50 yd. at 10 3/4c for January."

On September 27, 1920, and prior to receipt of the sale note No. 5162, the Noon Bag Company wrote a letter to O. C. Bynum reading as follows:

(16)

"We have yours of the 24th confirming our purchase of 1 carload 31″ 5 yard for March and had expected that this confirmation would contain some reference to the additional 50,000 yards mentioned in your telegram.

"If it is just as agreeable to the seller we would prefer to keep the carload at the usual carload yardage of 200,000 yards.

"Trusting you can arrange the matter in this way, we are"

On September 29, 1920, and after the Noon Bag Company had received from M. R. Jacobs & Bros., Inc., sale note No. 5162, the Noon Bag Company wrote a letter to M. R. Jacobs & Bros., Inc., as follows:

(17)

"We are in receipt of your sale note No. 5162 covering 1 carload of 31″ 48x48 5 yard at 11c per yard for shipment in March, 1921.

"We must know at this time the name of the mill and the location thereof before we can accept the sale note you have sent us.

"Another point is that our understanding of the terms of this purchase are 'net 10 days' f. o. b. cars.  On these terms only are we interested in purchasing.

"We await to hear from you with the above information and corrections, and are"

On September 30, 1920, O. C. Bynum wired Noon Bag Company as follows:

(18)

"Order forty-four car five yard will contain only two hundred thousand yards eleven cents four yard twelve one-half November to March shipment."

On September 30, 1920, O. C. Bynum wrote a letter to the Noon Bag Company, reading as follows:

(19)

"Referring to our correspondence regarding yardage for the carload of 31″ 48x48 5.00 yd. for March, covered by your order No. 44; sale note No. 5162, copy of which you no doubt have received, shows that it will be the usual quantity,—about 200,000 yds. The apparent discrepancy was caused by using the wrong word in coding the message of confirmation,—

the code word 250,000 yds. being used by oversight for the word meaning 200,000 yds. The actual purchase was for the latter quantity.

"Have covered the foregoing by wire today quoting you 31″ 5.00 yd. and 37″ 4.00 yd. at 11c and 12½c respectively, as per confirmation herewith.

"Awaiting your continued favors, I remain"

M. R. Jacobs & Bros., Inc., made the following entry in their books.

(20)

"Lowenstein                         No. 5162

Noon Bag.

1 carload mill, (abt. 200M yds)

31″—48/48—5.00 Sheetings Southern make,

Delivery, March, 1921 at 11c ten, f. o. b. mill S/D later

"BYNUM."

This entry was not signed by M. R. Jacobs & Bros., Inc., but was only a memorandum entry, and does not show who was buyer or seller.

On September 30, 1920, Noon Bag Company wrote to O. C. Bynum a letter as follows:

(21)

"We thank you for your wire received this morning reading:

"'Order No. 44 car 5 yard will contain only 200,000 yards offer 5 yard 11c 4 yard 12½c November to March shipment.'

"We have received a sale note from M. R. Jacobs & Bros., covering purchase of the 5 yard on which we observed the yardage in the carload is specified at 200,000.

"We regret to note the continued decline in sheetings as we had hoped that our purchase of the 5 yard at 11c would prove a good one. However, we firmly believe the whole situation rests upon the demand which will develop within the next 60 days.

"Thanking you for the offer, we are"

On October 4, 1920, M. R. Jacobs & Bros., Inc., wrote a letter to M. Lowenstein & Sons, Inc., reading as follows:

(22)

"We enclose confirmation purchase order No. 44 received from Noon Bag Co. covering their purchase of 31" 48/48 5.00 sheetings, our sale note No. 5160" (No. 5162).

On October 5, 1920, M. Lowenstein & Sons, Inc., wrote a letter to M. R. Jacobs & Bros., Inc., as follows:

(23)

"We have your favor of the 5th inst. enclosing copy of letter received from the Noon Bag Co. relative to sale note No. 5162 for one carload of 31" 5.00 sheetings.

"Please be advised that we have these goods coming in from various mills and we cannot, at this early date, advise you what mill make we will deliver, but they are all first class southern mill makes.

"As we understand that the Noon Bag Co. require this information in order to forward us specific routing instructions covering the shipment of these goods, we ask that you kindly notify the Noon Bag Co. that we will supply them with the mill make and the name and address of the mill that will make shipment in sufficient time for them to issue these specific instructions.

"Regarding terms f. o. b. cars, we have so marked our contract."

On October 5th, 1920, M. R. Jacobs & Bros., Inc., wrote M. Lowenstein & Sons, Inc., as follows:

(24)

"Confirming our conversation, we enclose copy of letter received today from Noon Bag Company with reference to sale note No. 5162. Please read this letter carefully so that we may transfer the information which Noon requests."

On October 6, 1920, M. R. Jacobs & Bros., Inc., wrote the Noon Bag Company as follows:

(25)

"Referring to your letter of the 29th ultimo re our sale note No. 5162, covering one carload of 200,000 yards 36″ 48/48 5.00 sheetings for March shipment. We enclose for your information copy of letter dated October 5th received from Messrs. Lowenstein & Sons and trust same will be satisfactory to you."

On October 12, 1920, the Noon Bag Company wrote M. R. Jacobs & Bros., Inc., a letter as follows:

(26)

"We are in receipt of your communication under date of the 6th enclosing letter from M. Lowenstein & Company bearing on the name of the mill from whom the 200,000 yards of 31″ 5.00 covered by your sale note No. 5162 is to be shipped.

"Our request for the name of the mill was not based solely on the desire to furnish specific routing instructions. The point which compels us to have this information is the proviso in your sale note which refers to the production of the mill to be curtailed during the time named by various causes and as a result thereof delivery shall be made only in proposition (proportion) to the production.

"It seems to us that if we are to agree to such a clause which places such indefiniteness about the delivery of this car we are justly entitled to know, when we sign this contract, the name of the particular mill that is likely to be subjected to such delay. It would be unbusiness like for us to permit the seller the option of shipping from half a dozen mills under such a qualification to the delivery.

"While we do not believe M. Lowenstein & Sons would resort to such ends, we suffered material damages because of our having some very cheap goods coming from an indefinite source being sidetracked and delayed because the seller was influenced to delay our cheap goods by the attractive offers they were

being made for spots.  We had a very cheap car of 4 yard for early February delivery which was not shipped until April.

"Therefore.we feel quite consistent in our request that the name of the particular mill from which this particular goods is to be shipped be now named."

On October 13, 1920, M. R. Jacobs & Bros., Inc., wrote the Noon Bag Company a letter reading as follows:

### (27)

"Kindly sign and return sale note No. 5162 under date of September 24th bought of M. Lowenstein & Sons, as we require same to complete our records."

On October 18, 1920, M. R. Jacobs & Bros., Inc., wrote to M. Lowenstein & Sons, Inc., as follows:

### (28)

"We are today in receipt of a letter from Noon Bag Company dated October 12, of which we enclose copy.  This refers to the 200,000 yards 31″ 48/48 5.00 sheetings sold to them by you, our sale note No. 5162.

"It appears that they are determined to have you specify a particular mill make on this contract on account of the production clause on our sale note.  If you can possibly specify one or two mills it would end matters satisfactorily for everyone concerned.  However, in the event that you cannot do this you might possibly waive production clause on the sale note thereby overcoming Noon Bag Co.'s objection.

"However, please attend to this matter and advise us promptly so that we may forward them a satisfactory answer to their request."

On October 18, 1920, M. R. Jacobs & Bros., Inc., wrote the Noon Bag Company as follows:

### (29)

"We acknowledge receipt of your letter of October 12th with reference to the name of mill on our

111 Or.—28

sale note No. 5162 covering 31″ 5.00 sheetings. We have communicated the contents of your letter to M. Lowenstein & Sons, Inc., and upon receipt of their reply, which we trust will be a satisfactory one in every respect to you, we shall forward same.''

On October 20, 1920, M. Lowenstein & Sons, Inc., wrote the Noon Bag Company as follows:

(30)

''We are in receipt of a copy of your letter dated October 12, addressed to M. R. Jacobs & Bros. covering sale No. 5162, your purchase order No. 44.

''Regarding your request that we name a specific southern mill from which these goods will be delivered, we beg to state that in view of the fact that we have these goods purchased from various southern mills and will give you goods during the month called for by the contract, we accede to your request and waive the production clause of this particular sale note.''

On October 20, 1920, M. Lowenstein & Sons, Inc., wrote a letter to M. R. Jacobs & Bros., Inc., reading as follows:

(31)

''Your favor of October 18th, enclosing letter from Noon Bag Co., dated October 12th, received.

''We have this day written them a letter, of which the enclosed is a copy.''

The copy of letter inclosed being dated October 20, 1920, is set forth in full above.

On November 2, 1920, the Noon Bag Company wrote a letter to M. Lowenstein & Sons, Inc., reading as follows:

(32)

''We have yours of October 20th in reference to M. R. Jacobs' sale note No. 5162, our purchase order No. 44.

"While we appreciate your offer to waive the production clause in this particular sale note, we feel that we are justified and right in now knowing the name of the mill from which this goods is to be shipped. In fact, we believe this particular carload should now be allotted to us and the information we request is highly desirable.

"While we have no intention of so doing at this time, it is barely possible that we may desire to sell this car and any other bag manufacturer would insist upon knowing the quality of the goods he was purchasing.

"If we were purchasing from a commission merchant or mill agent, they would have no hesitancy in giving the mills goods they were selling and we see no reason why you should hesitate to give us this information.

"Therefore, we must again ask that you comply with our request in this instance before we can execute the sale note as requested."

This was never complied with. (Testimony Armstrong, p. 56.)

On November 9, 1920, M. Lowenstein & Sons, Inc., wrote the Noon Bag Company a letter reading as follows:

(33)

"Your letter of the 2nd inst. to hand regarding M. R. Jacob's sale note No. 5162, your confirmed order No. 44 of September 24th, 1920, for one carload (about 200,000 yards) of 31″ 5.00 sheetings for delivery during March, 1921. We wrote you in our previous correspondence that we had these goods purchased the same way we sold them to you, coming from Southern mills, but at that time we did not know what mill make we were going to get. We have taken this up with the party from whom we purchased these goods, and they inform us that they will deliver us either Hunter J. P. Stevens or Seaboard mill make, which will be delivered to you against your order."

On November 19, 1920, Noon Bag Company wrote a letter to M. Lowenstein & Sons, Inc., reading as follows:

(34)

"We have yours of the 9th in reference to M. R. sale note No. 5162 and our purchase order No. 44 of September 24th, 1920, for one carload of 31″ 5 yard sheeting for March delivery.

"We note that you have these coming from either Hunter, J. P. Stevens or Seaboard make and that you intimated you have these goods coming from second hands. Being on the spot you must purchase direct from mill agents and under the circumstances you know absolutely from what source the car sold us will come.

"It will therefore be in order to allot to us a car for March shipment from either of the above mill makes. The quality of any will be satisfactory to us but we must know positively now the particular mills goods we are going to get.

"If you cannot do this it will be in order to cancel the transaction."

On November 20, 1920, Noon Bag Company wrote a letter to M. Lowenstein Sons, Inc., reading as follows:

(35)

"Supplementing ours of yesterday in regard to giving us the name of the mill from which the car of 5 yard was to be shipped, there seems to be, for some reason, a desire on your part to avoid complying with our request.

"Since this information has been absolutely necessary and the lack of it has only hampered us in concluding arrangements we had in hand, we cannot tolerate longer your evasive attitude and in so far as we are concerned we will consider the matter canceled and the incident closed."

On November 26, 1920, M. Lowenstein & Sons, Inc., wrote a letter to the Noon Bag Company reading as follows:

(36)

"Your favor of the 19th inst. received. We have taken this matter up with the party from whom we purchased these goods and they inform us that they will give us Hunter make goods which in turn we will deliver to you against your contract of September 24th, 1920."

The evidence shows that Hunter make goods does not designate any particular mill make; that, as shown by the evidence (defendant's exhibit 3), the Hunter Manufacturing Company represents, as sales agents, some forty-eight mills located in various states in the South.

On November 27th, 1920, M. Lowenstein & Sons, Inc., wrote Noon Bag Company a letter as follows:

(37)

"Your favor of the 20th inst. received. We wrote you on November 26th giving you the mill make we intended to deliver under your purchase order No. 44, dated September 24th, 1920, and under no conditions can we accept cancellation of the contract, we having in every respect complied with your purchase order, and will make delivery in accordance with the same."

The evidence shows that mail leaving Portland arrives in New York on the fourth day thereafter, and, in ordinary course, is delivered on the morning of the fifth day. (Testimony, p. 42.) It would, therefore, appear and the presumption would be, that the letters of the 19th and 20th of November written by the Noon Bag Company to Mr. Lowenstein & Sons, Inc., were both in their hands when they wrote the letter of November 27, 1920, above set forth.

On November 30, 1920, the Noon Bag Company wrote M. Lowenstein & Sons, Inc., a letter reading as follows:

(38)

"We have yours of the 26th and in reply can only refer you to our letter of November 20th, in which we advised that the matter had been cancelled and concluded as result your evasive replies to our many communications concerning same.

"We have nothing further to add to our communication of the 20th."

On December 6, 1920, M. Lowenstein & Sons, Inc., wrote the Noon Bag Company a letter as follows:

(38)

"We have your favor of November 30, 1920, and are very much surprised at its contents.

"We have written purchase order No. 44 dated September 24, 1920, which calls for one carload 31″ 48/48 5.00 sheeting delivery March, 1921, and also M. R. Jacobs, Inc., sale note No. 5162 calling for the same quantity and same delivery and which specifies 'Southern make goods.' Our former communications to you were not evasive, as under your purchase note and sale note herein referred to we were only obligated to give you Southern make goods, and we were under no obligations, either legal or moral, to specify in advance any particular mill.

"We shall expect you to live up to your written contract, and when the time arrives we shall make delivery accordingly."

On March 3, 1921, M. Lowenstein & Sons, Inc., mailed an invoice, No. 5405, to Noon Bag Company, stating terms net ten days f. o. b. mill for $21,900.37, which invoice was returned by the Noon Bag Company by letter dated March 9, 1921, to M. Lowenstein & Sons, Inc., reading as follows:

(39)

"We have received your invoice covering carload 31″ 48/48 5 yard sheeting and are returning same to you herewith.

"We refer you to our communications of November 30th and 20th advising that this order was cancelled."

On March 14, 1921, M. Lowenstein & Sons, Inc., wrote the Noon Bag Company as follows:

(40)

"We have your favor of March 9, 1921, enclosing our invoice of March 3, 1921 for $21,900.37, which we herewith return.

"If you will refer to our former correspondence and particularly our letter of December 6, 1920, in which we advised you that we would make delivery in accordance with our contract with you, and we have accordingly made delivery in accordance with our contract.

"If you do not pay this bill at maturity, there will be no other course open to us but to place this matter in the hands of our attorneys with instructions to commence suit.

"We trust, however, that this latter course will not be necessary but that you will forward us check for the amount of the invoice and give us shipping instructions."

On March 16, 1921, M. Lowenstein & Sons, Inc., wrote to the Noon Bag Company as follows:

(41)

"Enclosed please find statement covering the maturity of your account and will appreciate your check by return mail, and oblige"

On March 22, 1921, the Noon Bag Company wired M. Lowenstein & Sons, Inc., as follows:

(42)

"Answering your letters fourteenth sixteenth and wire twenty-first the conditions of sale note fifty-one

sixty-two were not acceptable therefore we refused to sign same canceling order in November and that ended the transaction so far as we are concerned."

On March 23, 1921, M. Lowenstein & Sons, Inc., wired the Noon Bag Company as follows:

(43)

"Telegram March twenty-second received have placed goods under sale note contract M. R. Jacobs and Bros. Inc., number fifty-one sixty-two in hands of brokers for sale for your account stop if unsuccessful will sell goods public auction for your account stop we will hold you liable for any deficiency."

On March 23, 1921, M. Lowenstein & Sons, Inc., wrote a letter to various brokers reading as follows:

(44)

"We offer subject to previous sale one carload 122 bales, exactly 199,094¼ yards 31″ 48/48 5.00 sheetings, Hunter Mfg. Co. make, product of Avondale mill, Birmingham, Ala., for spot delivery.

"Kindly secure best price available. We are selling these goods for account of one of our customers."

The contention of the defendant is that the negotiations do not constitute a contract; that the minds of the parties to the alleged contract never met. The contention of the plaintiff is that the communication, dated September 24, 1920, and numbered 14 above, concluded a complete contract binding upon the parties thereto. The Circuit Court found for the defendant to the effect that the minds of the parties never met so as to form a contract. The case was tried by the court without a jury. The only contention made by the plaintiff in this court is that the correspondence ending with the letter, dated September 24, 1920, from M. R. Jacobs & Bros., Inc., to Messrs. Lowenstein & Sons, Inc., No. 14, as a matter of law,

constituted an absolute and binding contract. The plaintiff saved an exception to the findings and tendered other findings so as to properly bring the case to this court for determination. That is the only issue joined in the appeal.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. S. J. Bischoff* and *Messrs. Beach & Simon,* with an oral argument by *Mr. Bischoff.*

For respondent there was a brief and oral argument by *Mr. O. A. Neal.*

COSHOW, J.—1, 2. It is well established in this state that the findings of the Circuit Court in an action at law have the force of a verdict: Section 159 Or. L.; *Cannon* v. *Farmers' Union Grain Agency,* 103 Or. 26, 40 (202 Pac. 725); *Stark* v. *State Industrial Accident Commission,* 103 Or. 80, 102 (204 Pac. 151). If there is any evidence in the record to support the findings of the Circuit Court, the judgment of that court must be affirmed.

3. The plaintiff contends that the telegrams and letters, passing between the parties directly and through their agents, constitute a binding and complete contract in writing, which it is the duty of the court to construe. Correspondence set out in above statement numbered 1 to 14, inclusive: *Williams* v. *Burdick,* 63 Or. 41 (125 Pac. 844, 126 Pac. 603); *Ankeny* v. *Young,* 52 Wash. 235 (100 Pac. 736); 35 Cyc. 54; 20 Cyc. 256; 27 C. J. 257, § 307, note 22; 7 C. J. 294, § 367, notes 86, 87; 23 R. C. L. 1260; 25 R. C. L. 644, 681; *Butler* v. *Thomson,* 92 U. S. 412 (23 L. Ed. 684); *Eau Claire Canning Co.* v. *Western Brokerage Co.,* 213 Ill. 561 (73 N. E. 430); *Merritt*

*v. Clason,* 7 Johns. (N. Y.) 102, 7 Am. Dec. 286; 4 Am. & Eng. Ency. Law, 751. The parties themselves, however, did not so treat this correspondence. When the sold note was transmitted from M. R. Jacobs & Bros., Inc., to the Noon Bag Company, the defendant, the latter was requested to detach, sign and return the receipt attached to said sales note, which reads in part as follows:

"Received from M. R. Jacobs & Bros., Inc. * *. Sales note No. 5162, which we have examined and confirm."

See also letters numbered 17, 26, 27, 32, 33, 34 and 35. It must be remembered that at the time the defendant wrote the letters and transmitted the telegrams, numbered 10, 11, 16 and 21, approving the alleged sale, the defendant had no knowledge of the condition embodied in the sales note transmitted by M. R. Jacobs & Bros., Inc., to the defendant. The same condition was incorporated in the bought note delivered to the plaintiff. As soon as the defendant had notice of that condition, it demanded explanations. There was no delay on the part of the defendant in making objection to the condition upon which the alleged purchase was made. There is nothing in the record that indicates, in any degree, that the defendant's agent had authority, in any manner, to modify the unconditional purchase order. Indeed, the letter from the agent of the defendant, O. C. Bynum, through whom the order was made, indicates that the purchase had been made from the owners of the goods. The fact is that the order was given to other brokers. The letter, dated September 27, 1920, from O. C. Bynum to the defendant, contains this language:

"I note that you were somewhat surprised at our being able to execute your order at the price under the circumstances existing at the time, *but we found the goods in second hands,* and landed them at our figure." Letter No. 15.

The fact appears to be that the goods were not owned by the plaintiff at the time the alleged contract was entered into. It appears that it had not so much as given an order for the goods for when the name of the mill was demanded by the defendant, the plaintiff was unable to give the required information.

The contention of the plaintiff that the correspondence, referred to and numbered 1 to 14, inclusive, in the statement herein, constitutes a valid and binding agreement could be upheld if the parties had rested on that correspondence and the broker had not exceeded his authority. Such were the facts in the cases of *Eau Claire Canning Co.* v. *Western Brokerage Company,* 213 Ill. 561 (73 N. E. 430), and relied upon by the plaintiff: *Williams* v. *Burdick,* 63 Or. 41 (125 Pac. 844, 126 Pac. 603); *Ankeny* v. *Young,* 52 Wash. 235 (100 Pac. 736, 738). Nor is the case of *Coast Fir Lumber Co.* v. *Parker,* 106 Or. 641 (213 Pac. 617), authority for sustaining the modification of the terms of the alleged purchase as authorized by the defendant. In the latter case, the confirmatory order did not in any wise change or modify the original contract. For that reason, the introduction of the confirmatory order was permitted. The jury was instructed that the confirmatory order was admitted solely for the purpose of showing how the parties dealt and acted in reference to the original contract. In the instant case, the agents of the defendant were given an unconditional order to purchase. The broker in New York modified that order by adding thereto

that the same was subject to the production of the Southern Mills. This was a material departure from the order. Such an addition left the defendant uncertain as to whether or not he would receive the goods ordered.

4, 5. It is contended by the plaintiff that the provision in the sale note objected to by the defendant was such a provision as the broker was authorized to make, because it was agreeable to the custom and usage in New York City in the cotton cloth trade. Custom and usage are not pleaded. The meaning of language used in framing contracts, and particularly with reference to manufactured articles, may be explained by oral testimony without pleading custom and usage. This is the principle announced in the case of *Coast Fir Lumber Co.* v. *Parker,* 106 Or. 641 (213 Pac. 617). Testimony is never admissible to prove custom or usage as authority for modifying a contract. In page 648 of the last mentioned case, the court used this language:

"The challenged evidence was received as a means of interpreting the contract and not for the purpose of importing new terms into it or for the purpose of varying terms already in it."

In the instant case the broker M. R. Jacobs & Bros., Inc., had authority for an unconditional purchase. They attempted to execute that authority by incorporating into the contract the following language:

"If the production of the Southern Mill shall be curtailed during the time above named by strikes, or any unavoidable casualty, the deliveries shall be made proportionate to the production."

This is clearly adding to the contract authorized by the defendant. It is a material modification of

that contract and beyond the authority of the broker to make.

6. A broker is an agent with limited authority: 2 Mechem on Agency (2 ed.), § 2397. He is not authorized to vary or change the terms of sale fixed by his principal: 2 Mechem on Agency (2 ed.), §§ 2402, 2407; 4 Am. & Eng. Ency. 968. In *Barnard & Bunker* v. *Houser,* 68 Or. 240, 243 (137 Pac. 227), Mr. Justice BURNETT says:

"Custom is used in evidence only as a means of interpretation of a contract, and not for the purpose of importing into it new terms: *Holmes* v. *Whitaker,* 23 Or. 319 (31 Pac. 705); *Savage* v. *Salem Mills Co.,* 48 Or. 1 (85 Pac. 69, 10 Ann. Cas. 1065)"; *Coast Fir Lumber Co.* v. *Parker,* 106 Or. 641, 648 (213 Pac. 617).

The instant case illustrates the proper function of custom. The witnesses Lowenstein and Shapiro were permitted to explain the various terms used in the correspondence, set out above, such as the amount of sheeting in a carload, what is meant by the description, "31"—48x48 5.00," the meaning of the Code word "orchard," etc.: 17 C. J. 499, § 62e.

"Evidence of usage is allowed not only to explain but also to add tacitly implied incidents to the contract in addition to those which are actually expressed; and where a contract is not in itself a complete expression of the intention of the parties, valid and known usages, if not inconsistent with the express terms, are admissible to supply matters as to which the contract is silent. *But where a contract is clear and complete, new terms cannot be added by usage.*"   17 C. J. 499, 500, § 63f.

The contract was completed with the purchase order subscribed by the defendant No. 11 in the statement. If the bought and sold notes had agreed with

the contract thus framed, there would have been no question about the validity of the contract. The brokers, however, undertook, without authority, to add terms or incorporate a condition. But the plaintiff contends that the contract was made by the defendant through its agent M. R. Jacobs & Bros., Inc.; that the contract as so made contained the "production" clause objected to; that the plaintiff accepted the terms of the contract as thus tendered.

"As in the case of any other agent, a broker has only such authority as is expressly or impliedly conferred upon him. * * On the other hand, if he exceeds his authority, his employer is not bound, unless the unauthorized acts are ratified; * * ." 4 R. C. L. 256.

*Durkee* v. *Carr*, 38 Or. 189, 196, 197 (63 Pac. 117); *Larson* v. *Newman*, 19 N. D. 153 (121 N. W. 202, 23 L. R. A. (N. S.) 849, 853).

"A broker is a special agent for a single object, and he cannot bind the principal beyond the limits of his authority. His power is limited by, and ceases with, his instructions, he having only such powers as are actually given; * * . " 9 C. J. 524, § 24 E.; *Henry* v. *Harker*, 61 Or. 276 (118 Pac. 205, 122 Pac. 298).

The entry made in its book by the broker M. R. Jacobs & Bros., Inc., is as follows:

"Lowenstein                                              No. 5162
                    Noon Bag
1 car load mill (abt. 200M yds.)
31" 48/48 5.00 Sheetings, Southern make,
                Delivery, March, 1921 at 11c ten f. o. b.
                mill S/D later.
                                        "BYNUM."

7. This entry was not subscribed, either by the principals or the broker, and was not, therefore, suffi-

cient to take the alleged contract out of the operation of the statute of frauds. The bought and sold notes would have framed a valid contract if they had been accepted by the principals. But the defendant promptly refused to accept or confirm the sold note.

"And it has been held that where the bought and sold notes agree with one another, but differ from the entry in the broker's book, there may be a contract between the parties according to the terms of the notes *founded upon the acceptance of the notes and silent acquiescence.*" 4 Am. & Eng. Ency. 753.

There can be no difference of opinion about the bought and sold notes differing from the entry in the broker's book. The entry evinces an unconditional sale, if it evinces any sale. The bought and sold notes evince a sale conditional on production without naming any particular mill or particular place of production.

"Where he (the broker) is employed to buy and sell goods; it is the custom to give the buyer a note of the sale called a 'sold note,' and to the seller a like note, called a 'bought note' in his own name, as agent of each, *whereby they are respectively bound, if he has not exceeded his authority.*" *Eau Claire Canning Co.* v. *Western Brokerage Co.*, 213 Ill. 561 (73 N. E. 430, 438), quoted in plaintiff's brief in page 17.

The case of *Ankeny* v. *Young*, 52 Wash. 235 (100 Pac. 736), is distinguishable from the instant case in this, that no claim was made that the broker had attempted to execute a contract beyond his authority. The questions in the case of *Ankeny* v. *Young*, cited above, were, was a contract made, and if made by the broker without authority, had the conduct of the broker been ratified? The supreme court held that the case should have been submitted to the jury, and

sustained the Superior Court in setting aside a previous order granting a nonsuit.

The case of *Williams* v. *Burdick,* 63 Or. 41 (125 Pac. 844, 126 Pac. 603), is also distinguishable. The question there involved was whether or not a contract was formed. No additions were made to the unqualified offer of seller responded to by an unqualified acceptance by the buyer. That is not the instant case.

8. The question of the motives of the defendant, and the intent of the parties as manifested by the correspondence between the parties, as set out in the statement, is one of fact. That question having been decided against the plaintiff is conclusive on this court.

The judgment of the Circuit Court is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BURNETT and RAND, JJ., concur.